Paul HUM, Individually and Derivatively, on behalf of all shareholders of Beaver Valley Livestock, Ltd., Appellant,

v.

Clayton ULRICH, Individually and d/b/a Clayton Ulrich and Sons, and Beaver Valley Livestock, Ltd., Appellee.

No. 89–852.

Court of Appeals of Iowa.

April 24, 1990.

Jon Fister of Beecher, Beecher, Holmes & Rathert, Waterloo, for appellant.

Gene Yagla and John A. Stitely of Lindeman & Yagla, Waterloo, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Paul Hum has appealed the district court judgment arising out of a dissolution of a partnership with Clayton Ulrich. He challenges the trial court's accounting of the assets and profits of the partnership. We modify the trial court.

In 1977, Hum became a one-third partner with Ulrich and Ralph Miller of a livestock purchasing and selling operation known as Beaver Valley Livestock. The land and buildings where the business was located were owned by Ulrich personally. Hum executed notes to each partner to finance his share. In 1979, Hum and Ulrich acquired Miller's one-third interest and became equal partners.

During 1980, the partners began to experience cash flow problems. As a result, the partnership was terminated as of April 1, 1981. The assets consisted of furniture and supplies, three trucks, equipment, and goodwill. After the partnership dissolved, Ulrich continued to operate the business for an additional six months until the assets could be sold. On October 15, 1981, Ulrich sold the partnership assets, except one truck and trailer, as well as the land and buildings where the business was located, to Doug Bradley for a lump sum of $80,000. In October 1983, Hum brought this action disputing Ulrich's attempted allocation of partnership assets following the sale. Following trial, the district court entered its decree concerning the proper distribution of partnership assets. Hum filed this appeal and Ulrich has filed a cross-appeal.

Hum contends that the district court erred by: (1) improperly allocating a greater percentage of the sale price of the business to personal assets of Ulrich instead of to partnership assets; (2) inadequately determining the partnership income; (3) failing to account for income earned by the business after the partnership was dissolved but before the assets were sold; and (4) entering judgment against Hum on a note rather than using it as an offset on Ulrich's right to income from the business. Ulrich filed a cross-appeal claiming that the district court erred in: (1) failing to reduce the distribution of assets by partnership losses; (2) improperly valuing a truck used by the partnership; (3) permitting a late disclosed expert to testify concerning tax issues; and (4) awarding pre-petition interest.

■ Actions for accounting upon dissolutions of partnerships are in equity and our review is therefore de novo. *Jensen v. Schreck*, 275 N.W.2d 374, 378 (Iowa 1979).

We are not bound by the findings of the trial court but give weight to them. *Id.*

A fiduciary relationship exists between joint venturers, such as partners. *Kurtz v. Trepp,* 375 N.W.2d 280, 283 (Iowa App.1985). The burden of proof normally rests with the partner claiming damages. *See Miller v. Merritt,* 233 Iowa 230, 235, 8 N.W.2d 726, 729 (1943). However, the burden may shift if, under the facts presented, a fiduciary is shown to be in a position to take advantage over the principal, or appears to have closer access to the facts. *Clinton Land Co. v. M/S Associates, Inc.,* 340 N.W.2d 232, 235 (Iowa 1983). The line of demarcation seems to be at the point where there is some indication of self dealing by the fiduciary or where the fiduciary is sued for an accounting of entrusted funds. *Id.*

The appellant claims that Ulrich was self dealing during the transactions necessary to sell the partnership. Ulrich counters this argument by suggesting that as the managing partner, Hum had equal access to all pertinent financial information during the partnership. Hum was the managing partner and generally kept the books for the partnership, however, Ulrich was clearly in a position to take advantage of the sale of the partnership.

There was a clear conflict of interest on the part of Ulrich. A higher price paid for the partnership would benefit both partners, however, Ulrich could benefit more from a lower price if a larger amount of the sale price could be allocated to his personal real estate which was sold with the partnership. This would give him more money in his own pocket because he would not have to split it with Hum. In addition, his capital gains would be maximized thereby giving him an even greater benefit. We hold that based on the controlling position Ulrich enjoyed over the sale of the partnership, the burden of proof should lie with him on issues regarding the sale of the partnership.

The main contention raised by Hum is that after the sale of the partnership, too much of the sale price was allocated to Ulrich's personal real estate, which was sold with the partnership, rather than to the value of the partnership. There was very little evidence introduced concerning the true value of Ulrich's personal real estate that was sold with the partnership. However, the record does show that the partners had paid Miller $25,000 for his one-third interest in the partnership, which would place a value of $75,000 on the partnership only two years before the sale. The partners had also valued the partnership at approximately $60,000 two years before Miller was bought out.

The total sale price of the personal real estate and partnership was $80,000. Ulrich allocated only $18,000 of that price to the value of the partnership. The trial court apparently accepted this allocation. Hum contends that reducing the value of the personal real estate to its appraised value of approximately $19,000 would raise the purchase price of the business to $61,000 ($18,000 + $43,000). This valuation would place a far more reasonable price on the partnership when we compare it to the earlier appraisals of $75,000 and $60,000. There is substantial evidence to suggest that the excessive valuation of the real estate is due to its connection to the partnership rather than vice versa. The real estate was valued at almost $45,000 over its appraisal, while the partnership was valued at least $45,000 under its appraised value.

Ulrich has failed to justify the excess allocation of the sale price to his real estate and we modify the trial court's ruling to increase the value allocated to the partnership by $43,000. One-half of this amount should be awarded to Mr. Hum, giving him an increase of $21,500. This change is based on an undervaluation of certain partnership property and goodwill. Ordinarily, goodwill is an asset of a partnership, and unless it is without value, should be accounted for upon dissolution. *Wolf v. Murrane,* 199 N.W.2d 90, 100 (Iowa 1972). In determining the value of goodwill attributable to the business, the past record of the business may be of some assistance. *Id.* The past record of the business shows that the trial court placed a value on the part-

nership that was less than the income earned during the first three months of 1981. The goodwill in this case may not be of such value as to justify multiplying the income by a factor of five or ten as is necessary in some companies. However, it is certainly sufficient to account for the excess over the appraised value of the real estate. We modify the trial court's valuation of the partnership.

Hum next contends the trial court did not account for certain sheltered income and did not account for income earned by the partnership between the dissolution and the date the assets were sold. Based on our review of the record, the trial court properly accounted for all income. The reapportionment of the sale price of the partnership has returned the parties to equal status. This is an equity action and we have achieved an equitable result.

Hum finally contends the trial court should have offset the note owed to Ulrich against the amount Ulrich owed to Hum awarded in this action. He argues that allowing the note to offset the amount owed from the sale of the partnership would place a lower interest rate on the note. The trial court was correct in granting a separate judgment on the note. The note was negotiated separately and Hum is not entitled to receive a lower interest rate merely because he forced Ulrich to sue on the note. We affirm the trial court on this issue.

Ulrich cross-appeals claiming that the trial court should have reduced the assets by the partnership losses. The alleged losses in this case were properly denied by the trial court. Hum correctly points out that such losses were often illusory because money was transferred between two different accounts, making it appear as if a loss had occurred. The realities of the situation show that whatever losses did occur were properly considered by the trial court.

Ulrich also claims the trial court improperly valued a truck used by the partnership. We hold the value placed on the truck by the trial court was well within the permissible range of evidence and we will not disturb it on appeal. *See In re Marriage of Bare,* 203 N.W.2d 551, 554 (Iowa 1973).

Ulrich also challenges the admission of Donald Bergan's testimony concerning certain tax issues. Ulrich specifically argues that the conclusions of the witness were not provided until the day before trial, thereby preventing him from preparing to refute Mr. Bergan's conclusions. Any delay in discovering the conclusions of the expert was due to Ulrich's lack of care. His failure to attend the pretrial conference prevented the proper setting of time limits for discovery. In addition, the responses to the interrogatories were timely filed and it was his late request for information that helped cause the one day notice. Finally, the trial court offered Ulrich a continuance to prepare a response to the expert, which he declined. Ulrich has effectively waived any complaint regarding surprise testimony by Donald Bergan. Trial courts are vested with broad discretion in determining the admissibility of expert opinion. *Wolf,* at 96. The trial court was well within its discretion in allowing the testimony.

Finally, Ulrich contends that pre-petition interest should be denied on any amounts owed to Hum. The general rule, in absence of a written agreement to the contrary, is that interest is not to be allowed on partnership assets until after a balance has been struck; however, interest may be charged under the circumstances of the case, if the equities require. *Id.,* at 100. Where one partner retains in his hands and uses, funds of the partnership during the pendency of settlement thereof, he should be required to pay interest on the balance found to be due the other partners. *Id.* Ulrich did retain at least a portion of partnership funds in his hands. The equities require that interest be awarded on such funds and the trial court was correct in awarding such interest.

AFFIRMED AS MODIFIED.