804 P.2d 403

Geralyn MONTOYA, Plaintiff–Appellee,

v.

**SUPER SAVE WAREHOUSE FOODS,**
Defendant–Appellant.

No. 18940.

Supreme Court of New Mexico.

Jan. 14, 1991.

Kastler & Kamm, Terrence R. Kamm, Raton, for defendant-appellant.

Daniel J. O'Friel, Linda Martinez–Palmer, Santa Fe, for plaintiff-appellee.

OPINION

RANSOM, Justice.

This is a sex discrimination case brought by Geralyn Montoya against Super Save Warehouse Foods under the New Mexico Human Rights Act, Sections 28–1–1 to –1–7, 28–1–9 to –1–14, NMSA 1978 (Repl. Pamp.1987). Super Save appeals from a jury verdict in favor of Montoya. Finding no error in the proceedings below, we affirm.

Montoya was employed by Super Save as a head cashier or "front-end supervisor" at a store in Las Vegas, New Mexico. In October 1985 she informed the store manager she was pregnant. The manager instructed her to begin training another employee as a replacement, but assured Montoya that her position was secure and that she later could return to her job. From this point on, however, Montoya's work hours were reduced and her job duties were significantly altered, while the work hours for her replacement were increased. Montoya believed that she would not be rehired in her former position after the birth of her child.

Montoya requested and received a meeting with the manager on January 26, 1986. The manager explained that he did not think it right for Montoya to come back and claim her position after training a replacement. He thought it would not be fair to the replacement. When Montoya explained, "All I'm going to do is have a baby and I'll come straight back," the manager said, "I still don't think its fair, Geralyn. How would you like it if the same thing happened to you?" Montoya then asked if she could take off two months. The manager said she could not take two months and have the same position back. She asked if she could take the usual six weeks people take. He replied that she could not. "The only way you can do that is if you will have your baby and come back the next day." Montoya testified, "He said the girl from Bag–N–Save had done that and if she could do it, certainly I could. I started to cry and I said I was not a dog. And when I was crying, it's when I told him I could not work like this anymore."

After leaving her employment with Super Save, Montoya applied for various jobs, but was unemployed for six months. During that period of time she received unemployment compensation. Her baby was born on May 24, 1986, and she elected to go to college in September 1986. It had been her intention to stay with Super Save until retirement, and the decision to return to school resulted from her difficulty in finding a full-time job.

Montoya filed her claim with the Human Rights Division in Las Vegas within San Miguel County where she was employed. She claimed she was forced to resign because of her sex and pregnancy. Super Save alleged Montoya voluntarily quit. The Human Rights Commission heard the case in Las Vegas and returned a decision in favor of Montoya.

Super Save filed a notice of appeal with the district court in Las Vegas within San Miguel County, as well as in Raton within Colfax County. The sole proprietors of Super Save were also proprietors of three other stores in Northern New Mexico. The records of these four stores were kept in Cimarron within Colfax County. The payroll for Super Save was paid out of Cimarron, grocery orders issued from Cimarron, final management decisions came from Cimarron, and all bookkeeping attendant to the four stores was kept in Cimarron. The district court in Colfax County found that Super Save "does business" in Colfax County and that the appeal was properly docketed there, but, nonetheless, on Montoya's motion for change of venue, the district court "transferred the case," in effect deferring to the district court in Las Vegas within San Miguel County. The district court in San Miguel County tried the case

to a jury. The jury returned a $25,000 verdict in favor of Montoya, and the court awarded an additional $25,000 in attorney fees.

Super Save appeals claiming (1) the jury was not properly instructed that lost wages are restricted to that period of time when Montoya diligently sought employment, (2) the trial court erred in allowing testimony from a rebuttal witness who was not timely listed and whose testimony was more appropriate for the case in chief, and (3) the venue was improperly moved from Colfax County to San Miguel County.

*Lost wages.* The trial court in its instructions to the jury limited recovery to the value of lost earnings and the present cash value of earning capacity reasonably certain to be lost in the future. The court then instructed the jury: "In fixing the amount of money which will reasonably and fairly compensate plaintiff, you are to consider that an injured person must exercise ordinary care to minimize or lessen her damages. Damages caused by her failure to exercise such care cannot be recovered." No objection was raised to this instruction and, consequently, it is the law of the case. *See Budagher v. Amrep Corp.*, 97 N.M. 116, 637 P.2d 547 (1981). Super Save argues that the court erred in not also instructing on its requested standard of "reasonable diligence," and in not requiring that the jury answer a special interrogatory indicating the precise period of time Montoya diligently sought employment.

In the recent case of *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 791 P.2d 452 (1990), a wrongful discharge case, we held that the burden is on the employer to prove by substantial evidence that the employee's damages would be alleviated by future employment opportunities. Accordingly, mitigation was raised here by Super Save as an affirmative defense through its request that the jury be instructed that Super Save "claims that plaintiff may not recover lost earnings or wages because she failed to diligently seek employment as she is required to do by law in order to mitigate any claimed damages. Defendant has the bur-

den of proving that plaintiff failed to diligently seek employment."

■ We agree that, in a sex discrimination case, as with damages recoverable in cases of wrongful discharge, the employer has the burden of proving the employee did not exercise reasonable diligence in mitigating lost earnings. *See Rutledge v. Johnson*, 81 N.M. 217, 465 P.2d 274 (1970); *Mitchell v. Jones*, 47 N.M. 169, 138 P.2d 522 (1943). In this case, nonetheless, the burden placed upon Montoya to show "ordinary care" to minimize or lessen lost earnings adequately instructed the jury on "reasonable diligence" and shifted the burden to the advantage of Super Save.

While the court did not present mitigation as an affirmative defense to be proved by Super Save, it did adequately instruct the jury that Montoya was required to diligently seek employment. This concept was described in terms of duty "to exercise ordinary care to minimize or lessen her damages." *See Fulton v. Cornelius*, 107 N.M. 362, 367, 758 P.2d 312, 317 (Ct.App. 1988) ("reasonable diligence" is such action as an individual of ordinary prudence would undertake under the circumstances).

■ We hold it is for the jury to decide, under the facts of each case, whether seeking formal education represents care or diligence to minimize damages. Here, there was evidence that it was the difficulty experienced by Montoya in finding comparable full-time work that motivated her to go back to school. The jury was properly instructed under the evidence, notwithstanding that "reasonable" might be preferable to "ordinary" and that "diligence" might be preferable to "care" in cases involving damages arising out of employment discrimination.

We note that counsel for Super Save fully argued to the jury the possible ramifications of Montoya's decision to obtain a college education in relation to her duty to minimize damages. Counsel argued that Montoya was required to use ordinary or reasonable care to reemploy herself and that the only period of time she reasonably searched for work was that period of time before she determined to go back to school.

As we have stated, however, we believe it is to be determined under the facts of each case whether a decision to seek additional education represents a lack of care or diligence to minimize damages.

 Nor, for the same reasons, was it error for the court to refuse to require the jury to answer a special interrogatory indicating the precise period of time the plaintiff diligently sought employment. In fact, the question could have misled the jury to believe that temporarily removing oneself from the job market by enrolling in school is automatically inconsistent with the obligation to diligently seek employment.

*To allow witness to testify is within court's discretion.* Citing *Khalsa v. Khalsa,* 107 N.M. 31, 751 P.2d 715 (Ct.App.), *cert. denied,* 107 N.M. 16, 751 P.2d 700 (1988), Super Save argues that the trial court committed error in allowing Montoya to call Cassandra Maestas as a rebuttal witness. Maestas was not disclosed as a potential witness in response to Super Save's pretrial interrogatories. Montoya argues that the need to call Maestas as a rebuttal witness was not anticipated and was precipitated by testimony from a witness of Super Save that was inconsistent with testimony given by that witness before the Human Rights Commission. Montoya's argument that the testimony of Maestas was necessary to rebut this new information is not persuasive. From the record, we do not see that the testimony of Super Save's witness was inconsistent with his previous testimony. We do not find reversible error, however, in the trial court's decision to allow Maestas to testify.

 In any just search for truth, a trial court must have broad discretion to admit or refuse testimony of witnesses whose identity was not revealed in answers to pretrial interrogatories. Rules of practice and procedure are not an end unto themselves. Only rarely could a court commit reversible error in the exercise of discretion in allowing a witness to testify, notwithstanding the failure to give timely notice of the witness, and notwithstanding the questionable use of a witness in rebuttal when the testimony arguably should have been forthcoming in the case in chief. When an undisclosed "rebuttal" witness is called, the trial court should seek to determine whether there has been genuine surprise arising out of unexpected testimony—genuine surprise that justifies calling the undisclosed witness. However, even if the surprise appears less than genuine, and the party calling the rebuttal witness reasonably might have anticipated calling the witness, absent a strong showing of prejudice we see no error in allowing the witness to testify.

 In this case the testimony given by the rebuttal witness concerned the disputed fact of whether or not Montoya's hours and duties were reduced after she informed the store manager that she was pregnant. Montoya, in her case in chief, had asserted that her hours and duties were diminished. Super Save's witness testified that Montoya's work hours and duties remained the same. Maestas, a co-worker of Montoya, testified that they were reduced. Under these circumstances we discern no prejudice to Super Save such as would render the court's decision to allow Maestas to testify an abuse of discretion. The testimony of Maestas was cumulative and only corroborated that of Montoya. Also, opposing counsel was well aware of the identity of the co-worker and what possible testimony she might offer—she had testified in the earlier hearings before the Human Rights Commission.

In *Khalsa v. Khalsa* the court of appeals determined the trial court in that case had abused its discretion by allowing an undisclosed witness to testify. *Khalsa,* 107 N.M. at 35, 751 P.2d at 719. However, the facts before the court of appeals in *Khalsa* were significantly different from those here, and we see no inconsistency with the court of appeals' treatment of that case and our decision today. In *Khalsa* the undisclosed witness was an expert, a witness whose pretrial deposition may well have been crucial to prepare effective cross-examination. When the expert witness was disclosed, the opposing counsel was denied an adequate opportunity to interview or depose him. The testimony of

that expert proved to be the only evidence that supported the trial court's decision. Thus, it was justified in that case for the court of appeals to conclude the party's ability to adequately defend was jeopardized.

*Venue.* Of significant concern in this case is the "transfer of venue." There is no claim that the court considered this to be a forum non conveniens transfer. Apparently, although not made specific in the briefs, the district judge in Colfax County thought that, under her construction of the venue statute, she was required to defer to the appeal taken to the district court in San Miguel County.

Under the Human Rights Act, if an informal conference cannot result in conciliation of a discrimination grievance, the Human Rights Commission is to issue a written complaint in its own name against the respondent. A hearing on the Commission's complaint shall be held *in the county where the respondent is doing business or where the alleged discriminatory practice occurred.* NMSA 1978, § 28–1–10(D). To preserve the status quo or to ensure that the Commission's order as issued may be effective, the district court *of the county where the respondent is doing business or where the alleged discriminatory practice occurred* may grant injunctive relief pending hearing by the Commission, or pending judicial review of an order of the Commission. NMSA 1978, § 28–1–10(E). If the Commission finds from the evidence that the respondent has engaged in a discriminatory practice, the Commission may require the respondent to pay actual damages to the complainant and to pay reasonable attorney fees. NMSA 1978, § 28–1–11(E). Appeal from an order of the Commission is provided as follows:

Any person aggrieved by an order of the commission may obtain a trial de novo *in the district court of the county where the discriminatory practice occurred or where the respondent does business* by filing a notice of appeal within thirty days from the date of service of the commission's order. [Emphasis added.]

NMSA 1978, § 28–1–13(A).

Super Save filed its notice of appeal both with the district court of San Miguel County, the county where the alleged discriminatory practice occurred and where the Commission had elected to hold the hearing on its complaint, and with the district court of Colfax County, a county where the respondent is doing business. The district court judge in Colfax County held that Section 28–1–13(A) required the trial de novo to proceed in the district court of San Miguel County. We agree.

The issue as to which of the two venues where the respondent filed notices of appeal was the proper venue, or whether both were proper, turns on the meaning of the phrase "the district court of the county where the discriminatory practice occurred or where the respondent does business" as found in Section 28–1–13(A). We note the legislature chose to designate the district court of *the* county and not the district court of *a* county. We believe the legislature intended that appeal for a trial de novo was limited to the district court of *the* county where the Commission elected, as between a place of doing business or of the alleged discriminatory practice, to hear its complaint. This interpretation of the statute comports both with the common practice of trial de novo in the same venue as the hearing from which appeal was taken, and of the strong preference given the complainant to choose the venue for trial. Colfax County was not a proper venue.

We need not decide whether the district court in Colfax County could have transferred the appeal to San Miguel County had not notice of appeal been filed there in timely fashion. That question was explored in the majority and specially concurring opinions in *Bracken v. Yates Petroleum Corp.*, 107 N.M. 463, 760 P.2d 155 (1988). Here, notice of appeal was filed in the proper venue and the district court in Colfax County did the right thing in deferring to the district court of San Miguel County. It would not serve the interests of judicial economy for us to comment further except to say that questions of venue or jurisdiction might best be addressed

through the extraordinary writ practice under SCRA 1986, 12–504. After expense and time are invested in a jury trial within a proper venue, this Court will indulge that rationale supporting the propriety and finality of the judgment entered upon a verdict by the jury.

For the reasons stated above we affirm the judgment of the district court in its entirety. The cause is remanded to the district court solely to award costs and reasonable attorney fees on appeal pursuant to NMSA 1978, Section 28–1–13(D).

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.