2006-NMCA-028

131 P.3d 85

**Jerry V. MAYEUX and Sally Brown Mayeux, Plaintiffs–Appellants,**

v.

**James R. WINDER and Katrina Erica Winder, Defendants–Appellees.**

No. 25,355.

Court of Appeals of New Mexico.

Dec. 21, 2005.

Hubert & Hernandez, P.A., Beverly J. Singleman, Las Cruces, NM, for Appellants.

Cervantes Moberly, P.C., Joseph Cervantes, Las Cruces, NM, for Appellees.

## OPINION

PICKARD, Judge.

{1} In this case, we decide whether the trial court abused its discretion in finding that the managing member of a limited liability land development company (the LLC) did not breach his fiduciary duty to the other

members of the LLC. In doing so, we must decide which party should bear the burden of proof in such a case and whether the burden of proof issue was adequately raised below. We also address whether the trial court abused its discretion in (1) allowing the testimony of a witness who was not on Defendant's pretrial witness list and (2) determining that Defendant was the prevailing party for purposes of assessing costs. Finding no abuse of discretion with regard to any of these issues, we affirm.

## BACKGROUND

{2} In 1997, Plaintiffs Jerry and Sally Mayeux purchased a lot from Defendant Jim Winder located in one of Defendant's subdivisions. (While Winder and his wife were both named defendants, we refer to them as "Defendant," since all the relevant actions in the case were taken by Mr. Winder.) Because Plaintiffs liked Defendant's style of subdividing, they told him that they would be interested in investing in similar projects. In 1998, the parties purchased some land located in Lincoln and Torrance counties and created a limited liability company, which they called Corona Ranch LLC. Plaintiffs and Defendant and his wife were the only members of the LLC. Under the parties' operating agreement, Defendant was to be the sole managing member of the LLC, and he was authorized to exercise "general supervision, direction and control" over the LLC. The operating agreement also contained a mandatory buyout provision, in which the parties agreed that if Plaintiffs wanted to withdraw from the LLC, Defendant would be required to buy them out. The agreement contained a formula for calculating the purchase price under the mandatory buyout provision.

{3} In addition to Corona Ranch, Defendant was involved in several other land development LLCs. He marketed all of his properties, including the Corona Ranch properties, under one trade name, "Heritage Ranch." Although the parties dispute the level of involvement, Plaintiff Sally Mayeux was involved in bookkeeping for the Corona Ranch LLC. Facts surrounding Sally Mayeux's involvement in the LLC's financial affairs, and the trial court's eventual findings

regarding this issue, will be discussed more fully below.

{4} Plaintiffs claim that sometime in 2002, they began to suspect that Defendant was using funds from the Corona Ranch LLC to pay for expenses generated by his other land development projects. At this time, they informed Defendant that they wanted to exercise their rights under the buyout provision. Plaintiffs claimed that their interest in the LLC was worth $1,500,792. Defendant replied that he would buy them out at a price of $205,000. Plaintiffs rejected Defendant's offer and filed suit.

{5} Plaintiffs' original complaint claimed breach of contract based on Defendant's failure to comply with the terms of the buyout provision and fraud based on a breach of fiduciary duty in connection with misappropriation of funds. The complaint also requested an accounting and damages for breach of the covenant of good faith and fair dealing. Plaintiffs later amended their complaint to add a claim for conversion. At trial, Plaintiffs' primary contention seems to have been that Defendant's improper usage of funds had devalued the worth of the company. Plaintiffs specifically allege that Defendant (1) paid his life insurance premiums with LLC funds when there was no benefit to the LLC; (2) paid for advertising for his other Heritage Ranch properties with LLC funds; (3) watered his cattle improperly, causing the nearby village of Corona to refuse to renew an agreement under which water was provided to the Corona Ranch subdivision; (4) paid the water bill for the subdivision with LLC funds, charged the residents fees for water, and then did not reimburse the LLC; (5) hired other people to manage the LLC and paid them with LLC funds, even though the parties had agreed that he would perform all the management duties himself with no extra compensation; (6) claimed that a zoning restriction precluded him from subdividing as planned when in fact there was no such zoning restriction; and (7) failed to keep proper records of expenditures.

{6} After approximately a year and a half of litigation, Defendant moved to amend his answer to include counterclaims seeking re-

covery based on Plaintiffs' management of the LLC's capital accounts. It appears that the trial court never formally ruled on the motion to amend, but the court's findings and conclusions show that the counterclaims were litigated and that Plaintiffs prevailed on them.

{7} In July 2004, the trial court conducted a three-day bench trial, hearing extensive testimony and admitting numerous exhibits. Plaintiffs testified on their own behalf and put on testimony from numerous fact witnesses. Defendant testified and put on testimony from his accountant and an expert accountant. Defendant testified that based on advice from his accountant, he now valued Plaintiffs' interest in the LLC at $306,666, rather than the approximately $200,000 that he had initially offered. The trial court also allowed Defendant to call Ken Binkley, a partner in the advertising agency employed by Defendant. Plaintiffs objected to Binkley's testimony on the ground that he was not on Defendant's pretrial witness list. Finding no prejudice to Plaintiffs, the trial court allowed the testimony.

{8} After trial, the court issued a memorandum decision. It noted that "[t]he gravamen of the suit is that [Defendant] breached his fiduciary responsibility as Manager of Corona Ranch LLC by self[-]dealing." The court stated:

> Having heard the testimony of the parties and their witnesses I am satisfied that [Defendant] did not breach his fiduciary duty to the [Plaintiffs] nor did he breach his contract with them. I am satisfied that there has been no fraud. I am satisfied that the various expenses were reasonably allocated between the various entities and under consistently applied methods.... I find that [Defendant] performed his job as Manager of Corona Ranch LLC in good faith and in the best interest of the Company.

The court denied Defendant's counterclaims, stating, "I do not make a credit for a negative capital account as I was not satisfied with the proof of that amount."

{9} The court awarded Plaintiffs $306,666 for their interest in the LLC, the amount Defendant acknowledged at trial to be owing.

The court clarified its decision by adopting many of Defendant's proposed findings of fact and conclusions of law. We address the substance of some of the court's findings and conclusions in our discussion below. Subsequently, the court entered a Judgment and Final Decree, which adopted the memorandum decision and awarded Defendant costs as the prevailing party.

## DISCUSSION

### 1. BREACH OF FIDUCIARY DUTY CLAIM

{10} On appeal, Plaintiffs have abandoned their other claims and argue only that they are entitled to damages based on Defendant's breach of fiduciary duty. Their primary contention seems to be that the trial court applied the wrong standard to their breach of fiduciary duty claim by (1) putting the burden on Plaintiff to show a breach of fiduciary duty rather than requiring Defendant to demonstrate the propriety of his conduct, (2) requiring proof by a preponderance of the evidence rather than by clear and convincing evidence, and (3) failing to apply the high standard appropriate to fiduciary duty claims and instead applying the lower standard appropriate to breach of contract claims. Plaintiffs also argue that the trial court generally abused its discretion in finding, on the evidence presented, that Defendant did not breach his fiduciary duty. Plaintiffs' theory for this argument seems to be that Defendant's failure to keep detailed, written records was enough by itself to constitute a breach of fiduciary duty.

{11} Plaintiffs' appellate briefing sets forth the facts in a light favorable to Plaintiffs. For example, Plaintiffs contend that they "proved" several different instances of self-dealing at trial. They also argue that "[t]here was substantial evidence in the case at bar that [Defendant] placed his own interests above those of Corona Ranch LLC and the [Plaintiffs] as minority, non-managing members in using Corona Ranch LLC assets and monies to benefit his private ranching operation and other land development LLCs in which [Plaintiffs] had no interest." We note that when we review a trial court's factual findings, the presence of evidence supporting

the result opposite from that reached by the trial court is not relevant. *See Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986) (holding that the plaintiff's statement that substantial evidence supported his claims represented "a basic misunderstanding of the function of appellate review," and noting that "[t]he question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached"), *limited on other grounds by Graham v. Presbyterian Hosp. Ctr.*, 104 N.M. 490, 723 P.2d 259 (Ct.App.1986).

{12} Despite these statements regarding the strength of their own evidence, Plaintiffs do not appear to actually argue that the trial court's findings were not supported by substantial evidence. Nor do Plaintiffs identify any of the trial court's findings to which they take exception. *See* Rule 12–213(A)(4) NMRA ("A contention that a verdict, judgment or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument has identified with particularity the fact or facts which are not supported by substantial evidence.").

▉ {13} Under these circumstances, we need not conduct a thorough review for substantial evidence. However, we note that Defendant testified at trial as to the propriety of the expenditures and other actions challenged by Plaintiffs. It was up to the trial court to determine whether Defendant was a credible witness and we will not second-guess the trial court's judgment in that regard. Nor are Plaintiffs aided by their citation to *Lawson v. Rogers*, 312 S.C. 492, 435 S.E.2d 853, 857 (1993), for the proposition that every presumption should be made against a fiduciary who is unable to account for challenged expenses with written receipts, invoices, or time cards. In that case, the trial court ruled against the fiduciary on the facts; here, even if a presumption applied, the trial court apparently found it was overcome by the credibility of Defendant's and his witnesses' testimony. We hold that, to the extent Plaintiffs make a substantial evidence claim, Defendant's testimony alone would have been a sufficient basis for the trial court to rule as it did. *See State ex rel.*

*Martinez v. Lewis*, 116 N.M. 194, 207, 861 P.2d 235, 248 (Ct.App.1993) ("[W]hen there is testimony going both ways, an appellate court will not say that the trial court erred in finding on one side of the issue.").

{14} We now turn to Plaintiffs' argument that the trial court erred in applying the wrong legal standards to their breach of fiduciary duty claim. We review this question de novo. *See State v. Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal.").

{15} Plaintiffs first argue that the trial court erred when it put the burden on them to prove that Defendant breached his fiduciary duty. Plaintiffs argue that "[t]he burden of proving fair dealing should have been shifted to [Defendant] to prove fair dealing by clear and convincing evidence, which he failed to prove." We answer this contention both procedurally and on the merits.

▉ {16} First, as a matter of procedure, we question whether Plaintiffs fairly invoked a ruling on the question of burden of proof. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). To be sure, the trial court was aware that Plaintiffs wanted Defendant to explain various expenses, and Plaintiffs did request a conclusion that Defendant bore the burden of accounting for expenditures by clear and convincing evidence. However, immediately thereafter, Plaintiffs requested a conclusion that the burden was a preponderance of the evidence, and as noted above, Plaintiffs' complaint contained no independent count for breach of fiduciary duty and instead mentioned breach of fiduciary duty only in their count for fraud, a count on which they would ordinarily bear the burden of proof by clear and convincing evidence. *See* UJI 13–304 NMRA.

{17} Thus, if the trial court did not fully appreciate Plaintiffs' burden of proof argument, it may be fairly said that Plaintiffs had no one to blame but themselves. Nevertheless, because we are to exercise our discretion to entertain issues on their merits, we

will proceed to consider the merits of Plaintiffs' stated breach of fiduciary duty issues. *See Aken v. Plains Elec. Generation & Transmission Coop., Inc.*, 2002–NMSC–021, ¶ 21, 132 N.M. 401, 49 P.3d 662.

{18} In support of their argument that a defendant in a breach of fiduciary duty case should bear the burden of showing fair dealing, Plaintiffs cite to two out-of-jurisdiction cases. *See Oakhill Assocs. v. D'Amato*, 228 Conn. 723, 638 A.2d 31 (1994); *Cronin v. McCarthy*, 264 Ill.App.3d 514, 202 Ill.Dec. 129, 637 N.E.2d 668 (1994). Plaintiffs have not cited, nor have we located, any authority stating that this is the rule in New Mexico. *Cf. Sanchez v. Saylor*, 2000–NMCA–099, ¶¶ 51–52, 129 N.M. 742, 13 P.3d 960 (citing *Oakhill* and *Cronin* and holding that this Court need not decide whether to adopt the rule from those cases as an "affirmative defense" to a claim against a fellow partner for reimbursement of expenses). Thus, we address as a novel issue the appropriate party on which to place the burden of proof in a breach of fiduciary duty case. We hold that under the facts of this case, the burden was mostly on Plaintiffs to show that Defendant breached his fiduciary duty, and that where the burden may have been on Defendant, there is no indication from the record that the trial court erroneously placed the burden on Plaintiffs.

{19} We tend to agree with Plaintiffs, that in some instances, the burden should be on the fiduciary to show proper dealings. For example, in a case involving a transaction that creates a facial presumption of self-dealing, such burden shifting might be appropriate. Many of the cases stating Plaintiffs' preferred rule involve such transactions. *Oakhill Associates*, 638 A.2d at 32, for example, involved a dispute over a nearly $300,000 construction project where the owner of the defendant construction company performing the services was also a partner in the plaintiff partnership.

{20} *Hum v. Ulrich*, 458 N.W.2d 615 (Iowa Ct.App.1990), similarly involved a facially suspect transaction. In *Hum*, one partner sold assets of a partnership as well as some of his personal assets to one buyer for a lump sum. *Id.* at 616. He then labeled a small portion of the sale price as compensation for the partnership assets and claimed the rest as compensation for his personal assets. *Id.* at 617. The court noted that if the fiduciary allocated a larger amount of the sale price to his personal assets, he would have "more money in his own pocket because he would not have to split [that part of the sale price] with [his partner]." *Id.* Because of that "clear conflict of interest," the court held that the burden of proof should lie with the fiduciary. *Id.; see also Cleary v. Cleary*, 427 Mass. 286, 692 N.E.2d 955, 958 (1998) ("[t]he general rule is that one acting in a fiduciary capacity for another has the burden of proving that a *transaction with himself* was advantageous for the person for whom he was acting" (internal quotation marks and citation omitted) (emphasis added)); *Walsh v. Walker*, No. B159560, 2004 WL 1759250, at * 7 (Cal.Ct.App. Aug.6, 2004) (unpublished) (" '[D]uring the existence of the fiduciary relationship any *transaction* by which one of the co-adventurers secures an advantage over the other is presumptively fraudulent and casts a burden on such party gaining the advantage to show fairness and good faith in all respects.' ") (quoting *Davis v. Kahn*, 7 Cal.App.3d 868, 86 Cal.Rptr. 872, 878 (Ct. App.1970) (emphasis added)). *But see Silverberg v. Colantuno*, 991 P.2d 280, 286 (Colo.Ct.App.1998) ("Defendants cite several Illinois cases for the proposition that, when there is a question concerning breach of fiduciary duty by a managing partner, that partner carries the burden of proving his or her innocence. However, such is not the rule in Colorado." (citing *Cronin*, 264 Ill.App.3d 514, 202 Ill.Dec. 129, 637 N.E.2d 668, other internal citations omitted, and relying on an ordinary contract case)).

{21} Here, most of the expenditures challenged by Plaintiffs were not presumptively suspect as were the transactions in *Oakhill Associates* and *Hum*. Plaintiffs' argument was essentially that Defendant made a series of relatively small expenditures from Corona Ranch LLC funds that benefitted his other companies. For example, some of Plaintiffs' proposed findings of fact, all of which the trial court rejected, included the following:

38. Corona Ranch LLC purchased a Ford Explorer with Corona Ranch money and titled the vehicle in the Defendant's name and paid $500 to Defendant Katrina Winder's sister.

. . . .

46. From 1999 to December 2002 [Defendant] paid from Corona Ranch LLC funds the sum of $300 to Hatch Mercantile . . . .

. . . .

50. From 1999 to December 2002 [Defendant] paid from the Company funds the sum of $4,161.00 to Cheryl Vana as labor . . . .

. . . .

52. From 1999 to December 2002 [Defendant] paid from Corona Ranch LLC funds the sum of $1,179.35 in office supplies and $4,415.13 in postage . . . .

Many of Plaintiffs' other proposed findings involved transfers of funds from Corona Ranch LLC to other companies owned in whole or part by Defendant.

{22} Unlike the transactions in *Oakhill Associates* and *Hum*, we cannot say that most of these expenditures are presumptively unfair or even suspect. Many of them, such as the expenditures for postage, office supplies, labor, and the vehicle, are presumptively legitimate. As for the amounts paid to Defendant's other businesses, they come closer to creating a presumption of impropriety, but there are also legitimate explanations for those expenditures. At trial, Defendant testified at length regarding his financial management of the various companies. Defendant explained that he would often make an expenditure that benefitted several of his companies, drawing the necessary funding from one of the companies, and then writing reimbursement checks to that company from the other companies. The trial court must have believed this testimony because it specifically held that "I am satisfied that the various expenses were reasonably allocated between the various entities and under consistently applied methods."

{23} Thus, to the extent that most of Plaintiffs' complaints concern matters on which they retained the burden of proof, we hold that no error occurred. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 733 (Tex.Ct.App.2004) (holding that the burden remains on the plaintiff to show a breach of fiduciary duty where a transaction is not presumptively unfair); *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wash.App. 502, 728 P.2d 597, 604–05 (1986) (holding that "mere allegations" of self-dealing do not shift the burden to the fiduciary and even once a plaintiff has shown self-dealing with regard to one transaction, "the burden does not shift to the fiduciary to prove the fairness of all transactions complained of"). It may be that, with regard to some of the expenses, the burden should have been shifted to Defendant, but as to these, as will be seen below, we cannot say that the trial court did not find in favor of Defendant pursuant to the proper burden and standard of proof.

{24} We also deem it noteworthy that Plaintiff Sally Mayeux was involved in the record keeping for the LLC. The parties heavily dispute the degree of her involvement and the duties she performed. For example, Defendant asserts that she "assumed and was assigned all bookkeeping [and accounting] responsibilities" for the company, that she "received all bank statements and cancelled checks . . . directly from the company bank," and that she "prepared and delivered financial statements and reports" to an accountant. Plaintiffs minimize Ms. Mayeux's role, stating that she merely "enter[ed] numbers from check registers kept by [Defendant] into a computer bookkeeping program."

{25} The trial court found the following facts:

63. Sally Mayeux generated, kept and maintained the financial books and records of Corona Ranch, LLC, and performed the responsibilities of bookkeeper for Corona Ranch, LLC between 1999 and mid-2002.

64. Sally Mayeux is formerly a licensed certified public accountant with education and experience to qualify her as the bookkeeper and accountant for Corona Ranch, LLC.

. . . .

72. Between 1999 and mid–2002, Sally Mayeux received all cancelled checks and bank statements from the Corona Ranch, LLC operating account....

. . . .

74. Between 1999 and mid–2002, Sally Mayeux prepared monthly financial reports for Corona Ranch, LLC including a general ledger, income statement, balance sheet, bank reconciliation, and other financial reports.

The trial court also entered the following conclusion of law:

101. By receiving monthly checks and bank statements, and preparing the financial statements, [Plaintiffs] waived, and are now estopped, from asserting any challenge to the expenses incurred, paid and allocated by [Defendant] as Manager of Corona Ranch, LLC.

{26} Plaintiffs' awareness of and involvement in the financial affairs of the company further support our conclusion that it was fair for Plaintiffs to bear the burden of showing that Defendant's facially legitimate expenditures were improper. In *Dufoe v. Dufoe*, No. 99–0463, 2000 WL 702303, at **2–3 (Iowa Ct.App. May 31, 2000) (unpublished), the Iowa Court of Appeals held that the burden of proving a breach of fiduciary duty remained on the plaintiff where he had prepared tax returns for the partnership. The court held that while the defendant partner had commingled personal and partnership funds, the burden of proving a breach of fiduciary duty remained on the plaintiff because he was "fully aware" of the commingling due to his involvement in the record keeping and tax preparation. *Id.* at *3, 2000 WL 702303. Like the plaintiff in *Dufoe*, Plaintiffs were involved in the record keeping for the LLC, and we find such involvement to weigh in favor of requiring them to prove a breach of fiduciary duty.

{27} In sum, we hold that in a case such as the present one where (1) a plaintiff challenges expenditures that do not themselves create a presumption of self-dealing and (2) the plaintiff is involved in the financial affairs of the partnership or LLC such that he or she has access to the entity's records, the burden of proving a breach of fiduciary duty remains on the plaintiff. To the extent that one or two categories of expenses do raise a possible inference of self-dealing, there is nothing in the record clearly showing that the trial court did not properly apply the burden and standard of proof. Specifically, the trial court's findings with regard to the presumptively legitimate expenses placed the burden of proof on Plaintiffs and explicitly ruled that Defendant's evidence preponderated. With regard to other expenses, the trial court did not place the burden of proof on Plaintiffs, did not use the preponderance of the evidence standard, and instead affirmatively found that Defendant's expenditures were properly accounted for. Under these circumstances, and in view of our concerns expressed above that Plaintiffs may not have presented their case in such a way that the trial court would have clearly understood what they were arguing, Plaintiffs have not convinced us that the record in this case shows such clear error as to call for a reversal. *See Gonzales v. Lopez*, 2002–NMCA–086, ¶ 27, 132 N.M. 558, 52 P.3d 418 (noting that appellant bears the burden of clearly demonstrating how the trial court erred); *see also State v. Rojo*, 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [trial] court's judgment." (internal quotation marks and citation omitted)).

{28} Next, Plaintiffs argue that the trial court applied the wrong substantive standard to their breach of fiduciary duty claim. Plaintiffs claim that rather than applying the high standard applicable to fiduciary duty claims, the court relied either on the lower standard applicable to contract claims or on the standard articulated in the parties' operating agreement, which is in good faith in the best interests of Corona Ranch LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances.

{29} As a general matter, we agree with Plaintiffs that a fiduciary relationship

imposes a duty on the fiduciary that is greater than the duty of good faith and fair dealing implied in all contractual relationships. *See Walta v. Gallegos Law Firm, P.C.*, 2002–NMCA–015, ¶ 40, 131 N.M. 544, 40 P.3d 449. However, Plaintiffs have not pointed us to anything in the record indicating that the trial court actually applied an incorrect standard. In support of their argument, Plaintiffs rely on the following statement in the trial court's memorandum decision: "I find that [Defendant] performed his job as manager of Corona Ranch LLC in good faith and in the best interest of the company." Plaintiffs also rely on several findings by the trial court, all of which contain variations on the statement that Defendant's actions were taken "in good faith and in the best interests of Corona Ranch, LLC using reasonable inquiry and ordinary prudence of a person in a like position under similar circumstances."

{30} We do not agree that these statements indicate that the trial court was unaware of the higher standard applicable to fiduciary relationships. Because the parties' agreement required Defendant to act "in good faith and in the best interests of the company," and because Plaintiffs' complaint alleged a breach of the duty of good faith and fair dealing, it is not surprising that the trial court would enter findings of fact using the language appropriate to those claims. Because none of the findings of which Plaintiffs complain actually mention fiduciary duty, we assume that those findings relate to Plaintiffs' contract claims, rather than their breach of fiduciary duty claim. *See Rojo*, 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [trial] court's judgment." (internal quotation marks and citation omitted)).

{31} We also note that in its memorandum decision, the trial court specifically stated, "I am satisfied that [Defendant] did not breach his fiduciary duty to [Plaintiffs] nor did he breach his contract with them." This mention of both theories of recovery further indicates that the court was aware of the difference between the two theories and did not improperly conflate them. For these reasons, we hold that the trial court did not apply the wrong legal standard to Plaintiffs' breach of fiduciary duty claim.

■ {32} Finally, in a variation of what appears to be their substantial evidence argument, Plaintiffs argue that the trial court abused its discretion in finding no breach of fiduciary duty on the facts of this case and Plaintiffs ask us to award damages. We will only overturn a decision under the abuse of discretion standard where "the court's ruling exceeds the bounds of all reason" or is "arbitrary, fanciful, or unreasonable." *Edens v. Edens*, 2005–NMCA–033, ¶ 13, 137 N.M. 207, 109 P.3d 295 (internal quotation marks and citation omitted). Unless this standard is met, we will not substitute our judgment for that of the trial court. *Meiboom v. Watson*, 2000–NMSC–004, ¶ 29, 128 N.M. 536, 994 P.2d 1154.

{33} In this case, the trial court heard three days of testimony. Defendant testified for several hours, and a brief overview of his testimony indicates that he explained to the court the contested expenditures. The trial court specifically found that "the various expenses were reasonably allocated between the various entities and under consistently applied methods." Plaintiffs disagree with this finding, but they do not explicitly challenge the sufficiency of the evidence supporting it. Thus, as stated above, we need not review the evidence that was before the trial court to see whether the findings are supported by substantial evidence. However, we are certain that Defendant's testimony alone would have been a sufficient basis on which the trial court could have decided that there was no breach of fiduciary duty. *See Sanchez*, 2000–NMCA–099, ¶ 12, 129 N.M. 742, 13 P.3d 960 (noting that we are entitled to disregard any evidence contrary to the trial court's findings). Since the trial court explicitly found that the contested expenditures were proper, we hold that the court did not abuse its discretion in ruling on the basis of that factual finding that Defendant had not breached his fiduciary duty.

## 2. TESTIMONY OF AN UNDISCLOSED WITNESS

{34} Plaintiffs next argue that the trial court abused its discretion in allowing Ken Binkley, a partner in the advertising firm used by Defendant, to testify even though he was not on Defendant's pretrial witness list. We do not find an abuse of discretion unless "the court's ruling exceeds the bounds of all reason" or is "arbitrary, fanciful or unreasonable." *Edens*, 2005–NMCA–033, ¶ 13, 137 N.M. 207, 109 P.3d 295.

{35} Defendant argues that Plaintiffs did not properly preserve their objection on this point. In order to preserve an issue for appeal, it must "appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine*, 106 N.M. at 496, 745 P.2d at 721. When Defendant expressed a desire to call Binkley, the trial court asked Plaintiff for a response. The following colloquy took place between the court and Plaintiffs' attorney:

[ATTORNEY]: Your honor, he wasn't identified—advertising has been an issue from day one. It's not something that he has just recently found out. I just grabbed my deposition of Mr. Binkley and it was just nothing more than trying to get copies of the invoices is what it was.

[THE COURT]: Well, there has been some fairly extensive testimony concerning the allocations.

[ATTORNEY]: Twelve pages is the extent of my deposition, your honor.

[THE COURT]: I can't see the prejudice to plaintiffs by allowing this witness to come up, so your permission is granted.

Based on the attorney's statement, the trial court would have understood that Plaintiffs objected to Binkley's testimony on the grounds that (1) they would be prejudiced because they were unprepared to question him and (2) there was no legitimate reason for Defendant to have failed to disclose before trial the intention to call him. Under these circumstances, we hold that the objection was properly preserved because Plaintiffs "fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *See Woolwine*, 106 N.M. at 496, 745 P.2d at 721.

{36} The trial court has "broad discretion to admit or refuse testimony of witnesses whose identity was not revealed" before trial. *Montoya v. Super Save Warehouse Foods*, 111 N.M. 212, 215, 804 P.2d 403, 406 (1991). Our Supreme Court has held that "[o]nly rarely could a court commit reversible error in the exercise of discretion in allowing a witness to testify, notwithstanding the failure to give timely notice of the witness[.]" *Id.* Our cases have generally held that undisclosed witness testimony should be excluded under two circumstances: (1) where prejudice to the appellant is severe because the testimony of the witness is crucial to the appellee's case and (2) where the appellee has gained a tactical advantage by willfully failing to disclose the intention to call a witness.

{37} In *Khalsa v. Khalsa*, 107 N.M. 31, 751 P.2d 715 (Ct.App.1988), we explained the type of prejudice warranting reversal on the basis of undisclosed witness testimony. We held that the trial court had abused its discretion in allowing the "surprise testimony" of a doctor, which was "the only evidence supporting the trial court's denial of joint custody." *Id.* at 35, 751 P.2d at 719. We noted that if we considered the doctor's testimony, we would have no choice but to find that the trial court's ruling was supported by substantial evidence, but that in the absence of the testimony, there was no evidence whatsoever supporting the ruling. *Id.* at 33, 751 P.2d at 717. In *State v. Griffin*, 108 N.M. 55, 58, 766 P.2d 315, 318 (Ct.App.1988), we relied on *Khalsa* to support our holding that the trial court had not abused its discretion in allowing the testimony of two undisclosed witnesses. The prosecutor in *Griffin* had not submitted a witness list, and the trial court continued the proceeding for an afternoon so that the defendant could interview two witnesses. *Id.* The defendant did not thereafter ask for more time. *Id.* We held that reversal was not required because the defendant had not shown prejudice. *Id.* We noted that the witnesses' testimony was ascertainable because the State's exhibits should have clued the defendant in to the

likely substance of the witnesses' testimony, and that the defendant had not shown how his cross-examination of the witnesses could have been improved by an additional opportunity to interview them. *Id.*

{38} In *Lewis ex rel. Lewis v. Samson,* 2001–NMSC–035, ¶¶ 6–17, 131 N.M. 317, 35 P.3d 972, our Supreme Court indicated the type of willful behavior that warrants disallowing the testimony of an undisclosed witness. The trial court in *Lewis* refused, as a discovery sanction, to allow the testimony of a witness disclosed on the eve of trial. *Id.* ¶¶ 11–13, 861 P.2d 235. Our Supreme Court upheld that decision, noting that the Plaintiff had failed on many occasions to disclose her intention to add witnesses. *Id.* ¶ 14, 861 P.2d 235. The Court stated: "This type of conduct, if tolerated, would frustrate the general purposes of discovery and the specific purpose of witness disclosure." *Id.* ¶ 15, 861 P.2d 235. *Cf. McCarty v. State,* 107 N.M. 651, 653, 763 P.2d 360, 362 (1988) (holding that, in the criminal context, it would be "consistent with the purposes of the Confrontation Clause" to exclude witness testimony where it appeared that the failure to identify witnesses before trial was "willful and motivated by a desire to obtain a tactical advantage" (internal quotation marks and citation omitted)).

{39} Here, Plaintiffs have alleged no prejudice besides their "lack of preparation and ability to counter ... Binkley's testimony with that of another witness so late in the trial." However, Plaintiffs have not indicated that they requested the opportunity to put on a rebuttal witness. Nor have Plaintiffs shown us that they asked for more time to conduct another deposition or interview of Binkley. *See In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App. 1992) ("This [C]ourt will not search the record to find evidence to support an appellant's claims."). As in *Griffin,* Plaintiffs have not demonstrated how their cross-examination of Binkley would have been materially improved had they had the opportunity to further interview him. Thus, Plaintiffs' allegations of prejudice do not rise to the level where we can say the trial court abused its discretion in allowing the testimony. More-over, there is no showing that Defendant willfully failed to disclose his intention to call Binkley in order to gain a tactical advantage. Under these circumstances, we hold that the trial court did not abuse its discretion in allowing Binkley to testify.

## 3. AWARD OF COSTS

{40} Finally, Plaintiffs argue that the trial court abused its discretion in awarding costs to Defendant as the prevailing party. Our Rules of Civil Procedure state that the prevailing party shall recover its costs "unless the court otherwise directs." Rule 1–054(D)(1) NMRA. We have held that the trial court has broad discretion to award costs or to refuse to award them. *See In re Adoption of Stailey,* 117 N.M. 199, 203, 870 P.2d 161, 165 (Ct.App.1994). In exercising this discretion, the court should "approach the issue of awarding costs on a case-by-case basis, based on the equities of the situation." *Marchman v. NCNB Tex. Nat'l Bank,* 120 N.M. 74, 94, 898 P.2d 709, 729 (1995) (internal quotation marks and citation omitted). However, a court does not have discretion to require the prevailing party to pay a losing party's costs unless "the costs are intended to serve as a sanction and the court clearly expresses its reasons for imposing such sanction." *Stailey,* 117 N.M. at 204, 870 P.2d at 166.

{41} The issue we must determine is whether the trial court abused its discretion in concluding that Defendant was the prevailing party. A prevailing party is defined as "the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller,* 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993). We have also defined the prevailing party as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Hedicke v. Gunville,* 2003–NMCA–032, ¶ 26, 133 N.M. 335, 62 P.3d 1217 (internal quotation marks and citation omitted). Finally, we have reiterated that the prevailing party is the party that wins on the "main issue of the case." *Id.*

{42} Plaintiffs argue that they are the prevailing party because (1) they recovered a money judgment, (2) Defendant lost on his counterclaims, and (3) the judgment was 50% higher than Defendant's pretrial offer of settlement. Defendant essentially argues that he is the prevailing party because Plaintiffs lost on the claims for breach of contract, fraud, breach of the covenant of good faith and fair dealing, and conversion and because the trial court's accounting awarded Plaintiffs exactly the amount Defendant said their interest was worth at trial, an amount that was nearly $900,000 less than Plaintiffs requested.

{43} Under these facts, we hold that the trial court did not abuse its discretion in finding Defendant to be the prevailing party and awarding him costs. We do agree with Plaintiffs that this is a close case because Defendant lost on his counterclaims and had to pay Plaintiffs more than he offered pretrial. For these reasons, it would not be unreasonable to conclude that Plaintiffs were the prevailing party. However, where a trial court must exercise discretion in deciding between two possible rulings, either of which would be reasonable, we will not reverse the court's decision. *See Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct.App.1993) ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion.").

{44} Moreover, we agree that Defendant's arguments are stronger than Plaintiffs' on the prevailing party issue. The valuation of Plaintiffs' interest in the LLC was clearly the heart of the case. As Plaintiffs acknowledge, all the counts in their complaint asserted "alternative legal remedies that [Plaintiffs] claimed entitled them to a higher amount owed for their partnership interest," although some of their other counts would also have supported their claims for punitive damages. With regard to that partnership interest, the trial court entered judgment for Plaintiffs in the amount of $306,666, the exact amount Defendant agreed was owing at trial, instead of the nearly $1.2 million Plaintiffs claimed. Thus, in light of the above and in light of the fact that it is Plaintiffs who are appealing, it seems fair to say that Defen-

dant won on the "main issue of the case." *See Hedicke*, 2003–NMCA–032, ¶ 26, 133 N.M. 335, 62 P.3d 1217. For this reason, we hold that the trial court did not abuse its discretion in determining that Defendant was the prevailing party and, as such, was entitled to costs.

**CONCLUSION**

{45} We affirm the decision of the trial court.

{46} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.