772

251 P.2d 260

## CRANE O'FALLON CO. v. VIA et al.

### No. 5509.

Supreme Court of New Mexico.

Nov. 20, 1952.

Rehearing Denied Dec. 29, 1952.

Seth & Montgomery, Santa Fe, for appellants.

Irwin S. Moise, Lewis R. Sutin, Albuquerque, for appellee.

SADLER, Justice.

The appellants, H. H. Via and National Surety Company, defendants below, complain of a judgment against them rendered by the district court of Valencia County in favor of Crane O'Fallon Company, the plaintiff, the appellee in this court, in the sum of $3,865.83, for goods, wares and merchandise said to have been sold and delivered to Clifford Taylor, a subcontractor, also a defendant herein, in the construction of a public building, to-wit, a research laboratory, for the Regents of the New Mexico School of Mines at Socorro under a contract between them and the defendant, Via, with the defendant, National Surety Company, as surety on the public bond given to secure performance of the contract according to its terms.

The plaintiff, Crane O'Fallon Company, is a Colorado Corporation, with its principal place of business at Denver, Colorado,

but authorized to do business in New Mexico. The defendant, Via, is a resident of Santa Fe, New Mexico, where she is engaged in business as a general contractor, while Clifford Taylor, d/b/a Taylor Plumbing and Heating Company, is a resident of Valencia County, New Mexico. The names and residences of the parties were as indicated above and the Regents of the New Mexico School of Mines being desirous of constructing a research laboratory at Socorro for use in carrying on the work of that institution, on December 17, 1948, they entered into a contract with defendant, Via, for the construction of the laboratory, a public building, at or near the site of the school in Socorro.

Incident to. the execution of the contract Via, the contractor, furnished the bond provided by 1941 Comp. § 6–511, with the defendant, National Surety Company, as surety conditioned, among other things, and subject to terms of the bond, upon payment for materials and supplies furnished upon or for work under the original contract, or any subcontract. The defendant, Clifford Taylor, was a subcontractor employed by defendant, Via, the contractor, to do the plumbing and heating work on the building. Commencing in March, 1949, the plaintiff furnished the defendant, Clifford Taylor, on an open running account goods, wares and merchandise for work to be done under his subcontract.

On or before September 14, 1949, during the progress of the work, the owner of the premises by its Superintendent, Dr. Workman, objected to a lavatory which had been installed by the plaintiff through subcontractor Taylor as not being satisfactory. On the date last above mentioned William E. Burk, architect under the original contract, at the request of Dr. Workman and with the consent of subcontractor Taylor, ordered from the plaintiff's office in Albuquerque, New Mexico, a No. 1–270–L 27 x 20″ Elayne white lavatory basin as a substitute for the lavatory already furnished and installed.

At the time this order was received at the Albuquerque office of plaintiff, it did not have the Elayne lavatory in stock. Accordingly, it ordered one from its factory in Trenton, New Jersey, with the knowledge and consent of Dr. Workman, architect Burk and subcontractor Taylor and delivered same to the premises of New Mexico School of Mines at Socorro on December 6, 1949. It was the last item of material furnished defendant, Clifford Taylor, under his subcontract and was furnished by plaintiff in good faith.

Notwithstanding delivery of the Elayne white lavatory basin as already shown, it was never installed in the building, either under the principal contract or any subcontract. However, it was delivered by the truck driver employed by the School of

Mines to the School of Mines at Socorro where it has since remained, uncrated in a storage room, since the time of its delivery as aforesaid. It should be added that this Elayne lavatory was materially different from the type called for by the specifications in that it was a flat cabinet or table type, the ones required by the contract documents being wall type china lavatories.

The defendant, Via, was not advised personally or through any agent, servant or employee of hers of the intended replacement of the lavatory basin previously installed by Taylor with the above-mentioned Elayne white lavatory basin, and there was no change order issued to her for such substitution. Nevertheless, the trial court found along with the above-mentioned facts that not only Clifford Taylor, the subcontractor, who ordered the Elayne lavatory, was indebted for a balance on open account including the charge to the Elayne lavatory in the sum of $3,865.83, but that the defendants, Via and her surety, National Surety Company, as well, were jointly and severally liable therefor and, accordingly, indebted to plaintiff in the same amount.

Formal written notice was served on defendant, National Surety Company, the surety named in the bond, on February 28, 1950, as provided by law. And, basing its conclusions of law on the foregoing facts found by the court, it deduced that plaintiff was entitled to recover from the three defendants named, Via, the contractor, Clifford Taylor, the subcontractor, and National Surety Company, jointly and severally, the sum of $3,865.83 with interest at six per cent. from June 6, 1950. Judgment was rendered accordingly, to review which and secure its correction the defendants, Via and National Surety Company, prosecute this appeal.

Due to the fact that there were numerous items charged on the open account as having been furnished for this job that were neither called for by the plans and specifications, nor approved as representing changes or extras under the contract, which items were not used in the construction or completion of the contract, it is not disputed that unless the charge as of December 6 (8), 1949, for the Elayne lavatory furnished on order of the subcontractor Taylor as a substitute for the one already installed in Dr. Workman's apartment the written notice given the surety on February 27, 1950, is ineffective to revive liability of the surety under the bond because given more than 90 days after date of the last charge item properly to be considered in that connection. There is no serious claim by the plaintiff that the questioned charge item on the open account entered as of December 8, 1950, but mistakenly referred to in the findings as December "6" does not represent the critical charge.

Indeed, as disclosed by the following statement from plaintiff's answer brief, it

recognizes its right to recovery depends absolutely upon its right to treat the item of December 8, 1950, as the last item of material furnished by it to the subcontractor, Taylor, for the School of Mines project, to-wit:

"In order for Appellee to recover, it is necessary that this Elayne lavatory constitute the last item of material furnished by Appellee to Defendant Taylor for the School of Mines project."

The real issue before us on this appeal is so clearly stated in the only assignment of error made by the defendants (appellants) that we shall begin our treatment of the legal side of our opinion by quoting it verbatim. It reads:

"The Court erred by holding that the original contractor and her surety herein are liable to plaintiff, who gave notice of its claim based upon the alleged last item of material furnished to a subcontractor on job (where, admittedly, plaintiff must rely upon such last item to be within the statutory period allowed for giving notice), and such last item was materially different from the kind required by the contract documents and was to have been substituted for installed item which did meet contract requirements, and where original contractor was not notified personally or otherwise of such additional or substituted items so furnished, and, when,

in fact, the proposed substitute item was delivered to a truck driver employed by the owner of the building, and it was never installed upon the work but has remained uncrated in a storage room since such delivery."

The bond upon which the plaintiff seeks to hold the surety, given to insure performance of the building contract, was taken under authority of 1941 Comp. § 6–511, L.1923, c. 136. The pertinent sections of this statute, so far as material, are quoted, as follows:

"Whenever any contract shall be entered into with the state or any county, municipality district, department, board, or public corporation thereof, for the construction * * * of any public building, * * * the contractor shall * * * furnish a bond executed by the contractor and some surety company * * * conditioned for the performance and completion *of such contract according to its terms,* * * * and the payments as they become due of all just claims for labor performed, and materials and supplies furnished, *upon or for the work under said contract,* whether said labor be performed, and said materials and supplies be furnished under the original contractor under any subcontract." 1941 Comp. § 6–511.

"Any person, firm, or corporation having a just claim for labor per-

formed, or materials or supplies furnished, *upon said work,* may maintain an action on said bond * * *." 1941 Comp. § 6-512.

"No action shall be maintained on such bond *unless* within ninety (90) days after performing the last item of labor or furnishing the last item of materials or supplies, the claimant shall file with the obligee named in said bond a written notice or statement specifying generally the nature and amount of the claim and the date of performing or furnishing the last item thereof, * * *." 1941 Comp. § 6-514. (Emphasis ours.)

The defendants raise no question about timeliness or sufficiency of notice served for purpose of establishing plaintiff's right to sue on the bond in the event the court should hold the critical item involved sufficed to keep alive the indebtedness otherwise recoverable. Apparently, the trial court took the view advanced by counsel for plaintiff that if materials were furnished to a subcontractor by a materialman who at the time of furnishing them believed in good faith they were to be used in the performance of a public building contract, a recovery on the bond could be had therefor whether or not such materials were actually used in a due performance of the contract; provided, of course, the

statutory notice was duly given within 90 days after furnishing of the last item thereof.

If there be any confusion in the mind of anyone as to what constitutes the issue before the court in this case from what has been said already, it can be quickly dispelled by quoting from the brief of defendants, as follows:

"At this point we deem it helpful to inform the Court that, as admitted by plaintiff, the critical item is a lavatory basin which was ordered by the architect of the School of Mines for installation in the bathroom of Mrs. Workman, wife of Dr. Workman, Superintendent of the School, with the consent and agreement of Clifford Taylor (the subcontractor) as a substitute for the one already installed therein in accordance with the contract plans and specifications. No change order was issued for the intended substitute and the general contractor was not advised personally or through any agent or employee of the intended replacement."

In other words, following some dissatisfaction expressed by Dr. Workman with the lavatory installed in his wife's bathroom, being the one called for by the plans and specifications of which nine others exactly like it had been installed on the job the architect, Burk, at the instance of Dr.

Workman called on Taylor, the subcontractor, to secure and install another type of lavatory selected by him, after removing the one already installed. The contractor, Via, was never consulted and knew nothing about the planned substitution, did not consent to it and upon its arrival declined to receive or install it. It remains on hand, uncrated, in a storage room at the School of Mines at Socorro. The procedure outlined in Article 15 of the contract for securing extras and changes in plans and specifications was not followed and neither of the defendants has ever recognized liability for the item charged against the job by the plaintiff who instigated the change at instance of Dr. Workman.

The architect, Burk, admitted his annoyance at having to deal with changes and extras. On direct examination by the attorney for plaintiff, he testified:

"Q. Do I understand you correctly, that this lavatory which you ordered was to replace one which had been installed on the job and which Doctor Workman found unsatisfactory? A. That is correct. That was the use for which it was intended.

"Q. I hand you what has been marked as Defendants' Exhibit No. 1 and call your attention to the picture in the upper left-hand corner and ask you to state whether or not the lavatory of·

the type as shown in that exhibit was what you ordered. A. Yes. That is correct.

"Q. If I understand you correctly, you did not, at that time, talk to either Mr. Taylor or any of his employes or to Mrs. Via or any of ·her employes? A. No, I don't think I did. It is somewhat customary on construction—

"Mr. Montgomery: (Interrupting) We object to the custom in a deal of this kind.

"A. *Alright.*

"The Court: I would just as soon have it in and weigh it properly. It won't poison my mind. A. What I was going to say, it is customary for an architect to enter into some sort of manipulations of the job without telling the contractors sometime. That was, I think, probably the ultimate intent of this thing. Change orders are a nuisance, you know, and I think this particular case it was more my personal desire to satisfy my client than it was to enter into any further things. I could have written a letter to Mr. Via and had Via go to Taylor and so on.

"The Court: Objection sustained, retroactive to the time you made it."

In outlining near the end of his quoted testimony what he could have done in connection with the proposed change, the architect relates in substance what he should

have done, but failed to do, in order to validate the change made, if approved by the contractor.

Counsel for the plaintiff argue for liberality in construing the statute authorizing bonds of the character here involved and cite authorities supporting the contention. L. P. Friestedt Co. v. U. S. Fireproofing Co., 10 Cir., 125 F.2d 1010. Our former decision in Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525, is relied upon as drawing an analogy between the purpose of such bonds in affording security to labor and materialmen for work done and materials supplied on public buildings and the security enjoyed by the same persons under mechanics' lien laws for work done and materials furnished for buildings and projects in private ownership. In Silver v. Fidelity & Deposit Co., 40 N.M. 33, 53 P.2d 459, 463, we approved the doctrine of liberal construction of the statute in question requiring bonds on public works but at the same time sounded a note of warning. We spoke on the claim for liberal construction as follows:

"We think this is reasonable and we so hold, being supported therein by the decisions of several courts of high standing and ability in jurisdictions where analogous statutes have been under consideration.

"Liberal construction, however, must not by process of extension be carried too far lest destruction of the statutory purpose be accomplished."

The foregoing presents a fairly accurate portrayal of the single issue presented on this appeal. The surety is not liable for the balance due on the account sued upon for want of statutory notice served within ninety days after the last item of the account unless the questioned item of December 8, 1949, for the Elayne lavatory may properly be treated as the last item. The defendants say it may not be so treated because it does not represent an item of materials called for by the plans and specifications made a part of the contract, or demanded by any change or extra authorized pursuant thereto, by reason whereof it was never accepted by defendants or installed as a part of the building constructed. With this contention we are compelled to agree and the language of the bond as well as the authorities support our conclusion. 43 A.J. 922, § 181 under "Public Works and Contracts"; 63 C.J.S. § 1178(b), p. 870 under Municipal Corporations; Ohio Oil Co. v. Fidelity & Deposit Co., 112 Ind.App. 452, 42 N.E.2d 406; State v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A.L.R. 296.

In Ohio Oil Co. v. Fidelity & Deposit Co., supra, in dealing with a statute somewhat similar to our own, the court spoke on the subject under discussion, as follows [112 Ind.App. 452, 42 N.E.2d 409]:

"* · * * The statutory provisions, and the provisions of the bond, constitute the contract upon which the surety had a right to stand and·by which its liability is to be determined. The surety did not engage to become liable for debts incurred, generally, by a subcontractor, nor did the surety or McQueen agree that any person, who might have a claim against the subcontractor for materials furnished to it, would have a right to recover as against them. It was only for materials furnished the subcontractor 'in the carrying forward, performing and completing of said contract' for which the materialman could recover upon such bond."

Many of the courts, as stated above and as did ours in Southwestern Portland Cement Co. v. Williams, supra, sense the analogy between cases arising under the mechanics' lien laws and those arising under statutes requiring bonds as security for payment for labor and materials furnished for public works, recognizing the latter as an outgrowth of the statutes creating mechanics' liens. Hence, they employ freely decisions under the latter statutes in disposing of cases arising under the former. More especially is this true as respects the requirement in mechanics' lien statutes calling for the filing of sworn statements of claim within a given number of days after the claimant ceases to perform labor or furnish materials in its analogy to the provision in bond statutes calling for notice to be served on obligee in the bond within a stated time after last item of labor or material setting forth nature and amount of claim and so forth. See Schwartz Materials Co. v. West End Realty & Const. Co., Mo.App., 154 S.W.2d 366; Peerless Unit Ventilation Co., Inc., v. D'Amore Const. Co., 283 Mass 121, 186 N.E. 280; A. M. Lewin Lumber Co. v. Gutman, 34 Ohio App. 458, 171 N.E. 342; Vogt v. Cannon Electric Co., 245 Ky. 766, 54 S.W.2d 338; Nelson v. Schrank, 273 App.Div. 72, 75 N.Y.S.2d 761.

In 43 A.J. 860, § 117, under the topic "Public Works and Contracts," the author of the text has this to say:

"Unjust and exorbitant claims for extra labor performed and extra materials furnished allegedly at the instance or direction of the public officer or agent under whose direction or supervision the work is being done have so frequently been made by contractors undertaking the construction of public improvements, and allowed by the public authorities charged with the construction of the improvement, as to excite judicial comment, and statutory provisions have been enacted in many states precluding the recovery for extra labor unless certain formalities prescribed by statute or ordinance are complied with. Moreover in the ab-

sence of statutory requirement it is now usual to insert in contracts for public work, particularly contracts with municipal corporations, stipulations that the contractor shall not be entitled to compensation for extra work or extra materials unless it has been ordered in a particular manner, usually, unless it has been ordered or authorized in writing by designated public officials or agents."

The contract in question had just such a provision as that indicated in the closing language quoted above to be found in Art. 15 thereof, reading as follows:

"In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered."

There is no contention that compliance with this provision of the contract was ever attempted. Indeed, the architect displayed his impatience and annoyance over such restrictions in his testimony quoted, supra, and characterized them as a "nuisance."

It is to be borne in mind that the statute under which the bond sued on was given calls for one conditioned "for the performance and completion of such (the) contract according to its terms" and payment of all just claims for labor and materials supplied "upon or for the work under said contract" or under any subcontract. It truly cannot be justly claimed that the item here relied upon to revive the indebtedness sued for represents a charge for materials supplied "upon or for the work under said contract". Indeed, it is a charge for an item intended as a substitute for a lavatory already installed in exact accordance with the plans and specifications, without the knowledge or consent of the contractor and in admitted defiance of the governing contract proviso for bringing about "changes" or adding "extras." It so happens the amount of the item was small, little more than $50 but the same ruling which upholds it would sustain liability for an item unlimited in amount.

The facts in the cases of A. M. Lewin Lumber Co. v. Gutman, supra; Vogt v. Cannon Electric Co., supra; and Nelson v. Schrank, supra, are so closely related to those present in the case at bar as to be

highly persuasive of the correctness of our conclusion that there is no liability on the part of defendants for the cause of action asserted against them. In A. M. Lewin Lumber Co. v. Gutman, supra [34 Ohio App. 458, 171 N.E. 344], the court said:

"It would require a strained decision indeed to hold that the furnishing of the drawers for silverware for the tables, and the cutting of the small windows for ventilation some time after the completion and acceptance of the building, performed under a new arrangement by which the same were to be paid for upon the basis of actual cost of material and labor, were any part of the carrying forward, performing, or completing of the original contract for the construction of the building. The evidence is ample that the items were for matters independent of the original contract, and were no part of the materials for the carrying forward, performing, or completing the original contract. The ventilating windows were not contemplated or provided for. The same may be said of the drawers for the tables. The items were for the construction of conveniences desired by the owners subsequent to their taking over and accepting the building as completed."

We are reminded time and again by counsel for defendants of the obligation resting on the contractor and her surety to complete "such contract according to its terms," and to pay for materials furnished "under said contract." They then put this pertinent inquiry:

"Who would contend that Mrs. Via had completed her contract according to its terms if Taylor had installed the very lavatory here in question and the same proved *unsatisfactory to the Board of Regents?* The convenience or personal pleasure of Dr. Workman would not save her (Via) in a demand by the Board to tear it out and install one meeting the specifications."

No satisfactory answer to this query suggests itself, or is supplied by argument of counsel, that does not absolve defendants of liability. It follows from what has been said that the judgment of the district court must be reversed and the cause remanded with a direction that the judgment reviewed be set aside and another entered in its stead in favor of the defendants dismissing the plaintiff's cause of action. The Clerk will tax costs of appeal against the plaintiff.

It Is So Ordered.

LUJAN, C. J., and McGHEE, COMPTON, and COORS, JJ., concur.