**Certiorari Granted, March 23, 2012, No. 33,275**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-032**

**Filing Date: October 7, 2011**

**Docket No. 30,068**

**STATE OF NEW MEXICO ex rel.**
**SOLSBURY HILL, LLC, d/b/a**
**NEUMARK IRRIGATION,**

      **Plaintiff/Appellee and Cross-Appellant,**

**v.**

**LIBERTY MUTUAL INSURANCE**
**COMPANY,**

      **Defendant/Appellant and Cross-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Keleher & McLeod, P.A.
James Rasmussen
Justin Breen
Albuquerque, NM

for Appellee

Bingham, Hurst & Apodaca, P.C.
Lillian G. Apodaca
Albuquerque, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

1

**{1}** Defendant Liberty Mutual Insurance Company (Liberty) appeals from the district court's enforcement against its surety bond of the claim of lien of Plaintiff Solsbury Hill, LLC d/b/a Neumark Irrigation (Neumark) under New Mexico's Little Miller Act, NMSA 1978, § 13-4-18 to -20 (1923, as amended through 1987) (the Act), for material supplied by Neumark to a subcontractor on a public works project. The district court entered judgment against Liberty in the amount of $42,321.29, plus prejudgment interest at the rate of 18% per annum pursuant to the open account credit agreements between the subcontractor and Neumark.

**{2}** On appeal, Liberty claims the court erred because Neumark failed to prove actual delivery of the material and incorporation of the material into the project, which, in Liberty's view, are essential requirements for recovery, and it also asserts that the court erroneously placed the burden on Liberty to show lack of actual delivery and incorporation. Liberty also claims that it has no liability because Neumark failed to comply with the Act's requirements relating to notice of Neumark's claim on the bond and notice to the obligee of the bond under Section 13-4-19 (A), (B), and (C). And Liberty claims that the court erred in awarding prejudgment interest. Neumark claims on cross-appeal that the court erred in not awarding it attorney fees and post-judgment interest at the rate of 18%.

**{3}** We hold that Neumark was entitled to recover its claim for unpaid invoices for material supplied. We further hold that the Act permits recovery by Neumark of prejudgment and post-judgment interest and that Neumark was entitled to recover the prejudgment interest it was awarded and the post-judgment interest it sought at the rate of 18%. In regard to attorney fees, we hold that the Act permits recovery of attorney fees, and we remand for further proceedings on the issue of the amount of attorney fees to which Neumark is entitled.

## BACKGROUND

**{4}** We rely for the most part on the district court's findings of fact and conclusions of law. Pertinent findings are as follows. The City of Rio Rancho (the City) entered into a construction contract with Salls Brothers Construction, Inc. (the contractor) for the City's Unser Boulevard Widening Project (the project), part of which involved installing an irrigation system. Liberty was the surety on a payment bond for the project, the contractor entered into subcontracts with Desertscapes, Inc. (the subcontractor) for irrigation work, and Neumark accepted credit applications from the subcontractor for Neumark's supply of irrigation material for the project, which became the credit agreements between them. The credit agreements provided for interest at 18% per annum "from original due date."

**{5}** Liberty provided its payment bond pursuant to Section 13-4-18. A supplier may sue on the bond pursuant to Section 13-4-19(A), which reads:

> Every person, firm[,] or corporation who has furnished labor or material in the prosecution of work provided for in such contract . . . shall have the right to sue on such payment bond for the amount of the balance thereof unpaid at the time of the institution of such suit, and to prosecute

2

such action to final execution and judgment for the sum or sums justly due him[.]

{6} Neumark supplied material to the subcontractor for installation of the irrigation system. The invoices for the delivery of the material showed the dates or approximate dates of delivery or pickup of the material. Neumark was not paid for certain material provided for the project. Neumark had a good faith belief that the material for the project was "being supplied for the prosecution of work specified in the contract for the [project]." The invoices for which Neumark asserted its claim under the Act were for material for the project.

{7} Neumark sent its notice of claim on the bond to the contractor by certified mail, return receipt requested, and the notice stated Neumark's claims with substantial accuracy. The contractor received the notice. Neumark filed the present action in September 2007 and mailed a notice of its claim on the bond to the City in July 2009.

{8} The court's pertinent conclusions of law relating to Liberty's appeal are:

> 4. Neumark supplied irrigation materials for the [project] in prosecution of the work provided for in the contract for the project.
>
> 5. Neumark had a reasonable good faith belief that the irrigation materials at issue for the [project], reflected in Neumark's invoices . . .[,] were being supplied for the prosecution of work specified in the contract for the [project].
>
> 6. [Liberty] produced no evidence to contradict that Neumark had a good faith belief that the materials were being provided for the bonded [project].
>
> 7. Neumark's notice on its claim on the bond for the [project], mailed to [the contractor] on May 22, 2007, substantially complied with the notice requirements of [the Act], [Section] 13-4-19(A).
>
> 8. Neumark's notice to [the contractor] of its claim on the bond for the [project] was timely.
>
> 9. [Liberty] is liable as surety on the bond issued pursuant to the [Act] for sums justly due to Neumark under its credit agreements with [the subcontractor] (not including attorney[] fees) for materials supplied for the [project].
>
> 10. Interest of 18% was justly due to Neumark and part of the balance unpaid on the . . . project at the time of the institution of the suit.

The court denied Neumark's claim for attorney fees on the ground that Liberty and the contractor were not parties to the credit agreements between Neumark and the subcontractor. The court further awarded Neumark post-judgment interest at the rate of 8.75% instead of

3

at the rate of 18% requested by Neumark.

## DISCUSSION

### The Issue of Delivery and Incorporation of Material Raised by Liberty

**{9}**     Liberty contends that the district court erred by allowing recovery by Neumark when Neumark failed to prove that it delivered the material and that the material was actually incorporated into the project. Liberty asserts "[i]t is well established in New Mexico that in order for a materials supplier to collect against a payment bond, the supplier must not only prove the materials were delivered but that they were incorporated into the project." Based on this assertion, Liberty contends that it was entitled to a judgment of dismissal of Neumark's claim under the Act. Liberty relies on *Crane O'Fallon Co. v. Via*, 56 N.M. 772, 251 P.2d 260 (1952), and *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 690 P.2d 1016 (1984). Liberty also contends that the district court erroneously applied a "good faith" standard in allowing Neumark's claim.

**{10}**     The question whether the Act requires a supplier to prove that the material supplied was delivered and incorporated in the project is a question of law, which we review de novo. *See Maes v. Audubon Indem. Ins. Group*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934 (stating that statutory interpretation is an issue of law, which appellate courts review de novo); *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA-115, ¶ 13, 138 N.M. 318, 119 P.3d 743 ("Conclusions of law by the district court are reviewed de novo.").

**{11}**     Furthermore, "on appeal, the evidence is to be viewed in the aspect most favorable to the action of the court which is being appealed" and "[e]very reasonable intendment and presumption will be resolved against appellants in favor of proceedings in the trial court." *Lopez v. N.M. Bd. of Med. Exam'rs*, 107 N.M. 145, 146, 754 P.2d 522, 523 (1988); *see also Allen*, 2005-NMCA-115, ¶ 13 ("We resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings.").

**{12}**     Neither *Crane O'Fallon* nor *Goodmans Office Furnishings* supports Liberty's view of New Mexico law. In *Crane O'Fallon*, the sole issue on appeal was whether the plaintiff met the statutory notice requirement. 56 N.M. at 775, 776, 778, 251 P.2d at 262, 263, 264. Our Supreme Court reversed the district court's holding in favor of a supplier, holding that the supplier failed to give a timely statutory notice to the surety. *Id.* at 778-81, 251 P.2d at 264-66. The supplier's recovery in *Crane O'Fallon* depended on one particular item, a lavatory, constituting the last item of material furnished to the subcontractor. *Id.* at 773-74, 251 P.2d at 261-62. It turned out that the lavatory the supplier delivered was not the one called for in the contract specifications, was an item for which no change order was issued, was never installed in the building that was being constructed, and remained uncrated in a storage room. *Id.* at 773-74, 776, 251 P.2d at 261-62, 263. The contractor knew nothing about the planned substitution, did not consent to it, and upon its arrival declined to receive or install it. *Id.* at 777, 251 P.2d at 263. The Court determined that the supplier's notice of claim was not timely because the supplier could not use the substitute lavatory to prove when the last item of material was furnished. *See id.* at 772-81, 251 P.2d at 260-66.

4

**{13}** Liberty does not contend that *Crane O'Fallon*'s ultimate determination or the analysis from which the determination was derived controls the outcome in this case. Indeed, it could not contend as much given the significant difference in facts and because, in *Crane O'Fallon*, the material was not called for in the contract or expected to be incorporated into the project and undisputedly was never taken from its crate or used in the project. We do not read *Crane O'Fallon* to support Liberty's view that Neumark had to prove that it delivered the material and that the material was actually incorporated into the project.

**{14}** Liberty, in fact, cites *Crane O'Fallon* only for the following statement, arguing that *Crane O'Fallon* rejected a good faith standard.

> Apparently, the trial court took the view advanced by counsel for [the] plaintiff that if materials were furnished to a subcontractor by a materialman who at the time of furnishing them believed in good faith they were to be used in the performance of a public building contract, a recovery on the bond could be had therefor whether or not such materials were actually used in a due performance of the contract; provided, of course, the statutory notice was duly given within [ninety] days after furnishing of the last item thereof.

*Id.* at 776, 251 P.2d at 262. Given the facts and holding in *Crane O'Fallon* and the indefiniteness of this statement, plus the facts that in the case before us the district court determined that Neumark provided material for the project, that the invoices for which Neumark asserted its claim covered material for the project, and that Neumark supplied material for the project in prosecution of the work provided for in the contract for the project. We are not willing to consider the statement as having any precedential value or to be controlling under the present facts.

**{15}** In *Goodmans Office Furnishings*, our Supreme Court affirmed allowance to the contractor and surety of a credit for excess material and equipment delivered but not used in the project. 102 N.M. at 23, 24, 690 P.2d at 1017, 1018. The supplier did not contest the fact that a portion of what it supplied had not been used in the project, but nevertheless claimed that the mere delivery of the material for use in the project, as opposed to actual incorporation, was sufficient to allow recovery on the surety's bond. *Id.* at 24, 690 P.2d at 1018. The Court disagreed with the supplier. *Id.* The circumstances in *Goodmans Office Furnishings* are also significantly different from those in the present case. The supplier sought payment even though it acknowledged that the material was in excess of what was required for the project and was not material to be incorporated in the project. *Id.*

**{16}** In neither *Crane O'Fallon* nor *Goodmans Office Furnishings* was the issue on appeal the issue presented in the case before us. Neither case stands for the bright-line rule that Liberty advocates, namely, that a subcontractor must prove that materials supplied for a project were actually delivered to the project and incorporated in the project in order for the supplier to recover on the surety's bond. Apparently understanding this, Liberty turns to two Tenth Circuit Court of Appeals cases decided under the Miller Act, 40 U.S.C.A. § 270 (West 2006) (current version at 40 U.S.C.A. § 3131), the act on which New Mexico's Little Miller

Act is modeled. *See State ex rel. Nichols v. Safeco Ins. Co.*, 100 N.M. 440, 446, 671 P.2d 1151, 1157 (Ct. App. 1983) (stating that the Act is modeled after the federal Miller Act). The federal cases are *United States ex rel. State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774 (10th Cir. 1968), and *St. Paul-Mercury Indem. Co. v. United States ex rel. H.C. Jones*, 238 F.2d 917 (10th Cir. 1957). Liberty at the same time acknowledges that the Tenth Circuit Court of Appeals "does not require that a supplier prove that the materials were actually incorporated into the [p]roject." But Liberty asserts that these cases require "the supplier prove that the materials were actually delivered for use on the [p]roject." These cases do not assist Liberty.

{17}    The district court found and concluded that Neumark supplied the material to the subcontractor for the project and in the prosecution of the work provided for in the contract. Liberty did not specifically challenge these determinations regarding the supply of material as lacking substantial evidence support. *See Mayeux v. Winder*, 2006-NMCA-028, ¶ 12, 139 N.M. 235, 131 P.3d 85 ("[The p]laintiffs do not appear to actually argue that the trial court's findings were not supported by substantial evidence. Nor do [the p]laintiffs identify any of the trial court's findings to which they take exception."); *see also* Rule 12-213(A)(4) NMRA ("A contention that a . . . finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]"). The court's unchallenged findings as to supply of the material stand even though Liberty may have produced evidence supporting its own view. *See Mayeux*, 2006-NMCA-028, ¶ 11 (stating that when an appellate court reviews "a trial court's factual findings, the presence of evidence supporting the result opposite from that reached by the trial court is not relevant"). Under such circumstances, an appellate court "need not conduct a thorough review for substantial evidence." *Id.* ¶ 13.

{18}    We conclude that the Act does not require that Neumark prove anything beyond the fact that it supplied the material to the subcontractor for and in the prosecution of the work provided for in the contract and also supplied the material for the project, as found by the district court. We note that in the district court, Liberty required no more than this when it requested the court to enter the following conclusions of law:

> 4.    A subcontractor or supplier may not recover on the bond unless they deliver material or perform labor called for under the terms of the prime contract.
>
> 5.    The burden of proof remains upon a materialman to prove by reliable evidence from which it can be reasonably inferred that the materials were furnished in the prosecution of the work provided for in the prime contract.
>
> 6.    Where labor and materials are actually furnished in the prosecution of the work, the [Act] does not require that the material that has been furnished be incorporated into the work in order to recover under the payment bond.

6

(Citations omitted.)  Indeed, the Act itself protects those who "furnished labor or material in the prosecution of work provided for in [the] contract[.]"  Section 13-4-19(A).

{19}     Furthermore, although not in our view the controlling determination by the district court on the issue of supply of the material, the court determined that Neumark "had a reasonable good faith belief that the irrigation materials . . . for the [project], reflected in Neumark's invoices . . . were being supplied for the prosecution of work specified in the contract for the [project]."  Federal cases interpreting the Miller Act hold that it is not a plaintiff's burden to prove that the materials were actually delivered to the project:  "As long as there is good faith . . . delivery to the job site or actual use in the prosecution of the work is immaterial to a right of recovery.'"  *United States ex rel. Krupp Steel Prod., Inc. v. Aetna Ins. Co.* (*Krupp I*), 831 F.2d 978, 980 (11th Cir. 1987) (internal quotation marks and citation omitted); *see also United States ex rel. Westinghouse Elec. Supply Co. v. Endebrock-White Co.*, 275 F.2d 57, 60 (4th Cir. 1960) ("Neither delivery of the material to the prime contract job site nor actual incorporation of the material into the work is required.").  The case of *United States ex rel. J.P. Byrne & Co. v. Fire Ass'n of Philadelphia*, 260 F.2d 541, 545 (2d Cir. 1958), illustrates the important policy reasons why a supplier should not be saddled with proof of actual delivery to the job site.

> [R]equiring the supplier to trace specific materials after they have left his control may often place upon him an impossible burden of proof even when the items involved were in fact consumed.  Moreover, even if appropriate tracing measures could be devised, the courts, in enforcing one remedial policy, should be hesitant to compel an industry to accept what may be artificial and burdensome accounting practices.

*Id.*

{20}     This interpretation of the Act comes within New Mexico and federal law requiring that the Act and the Miller Act be construed liberally in favor of the claimant.  *See Goodmans Office Furnishings*, 102 N.M. at 25, 690 P.2d at 1019 ("[T]he statute is remedial in nature and . . . its principal purpose is to protect the supplier of labor and materials, and . . . it should be liberally construed to effectuate the obvious legislative intent." (internal quotation marks and citation omitted)); *see also United States ex rel. Moody v. Am. Ins. Co.*, 835 F.2d 745, 747 (10th Cir. 1987) ("In general, the Miller Act is entitled to a liberal construction and application in order properly to effectuate the [c]ongressional intent to protect those whose labor and materials go into public projects." (internal quotation marks and citation omitted)); *Krupp I*, 831 F.2d at 980 ("The [Miller] Act is highly remedial in nature, and its terms should be liberally construed." (internal quotation marks and citation omitted)).  Where, as here, the district court was fully satisfied that the material was supplied to the subcontractor and for the project and that Neumark supplied the material with a reasonable good faith belief that the material was supplied for the prosecution of the work specified in the contract, we see no reason to reject the approach as reflected in the federal cases.

**{21}** We hold that the district court's findings of fact and conclusions of law in regard to Neumark's supply of the material support the court's determination that Neumark was entitled to recover on Liberty's payment bond under the Act.

**The Notice Issues Raised by Liberty**

**{22}** Liberty raises two notice issues. It asserts that Neumark's notice of claim was not timely and did not substantially comply with the notice requirements in Section 13-4-19(A). Liberty also asserts that Neumark failed to provide notice to Liberty's payment bond obligee, the City, of the beginning of the lawsuit, and therefore did not comply with the notice requirement in Section 13-4-19(B). Thus, Liberty contends, the district court erred failing to hold in Liberty's favor on these points.

**Notice of Claim**

**{23}** The Act sets out the following notice of claim requirements for recovery on a payment bond: (1) written notice must be served on the contractor; (2) the notice must state the amount of the claim with substantial accuracy; (3) the notice must be served on the contractor within ninety days of the last provided material; (4) the notice must be served by registered mail in an envelope; and (5) the notice must be addressed to the contractor at any place the contractor maintains an office or conducts business, or the contractor's residence. Section 13-4-19(A). Liberty contends that Neumark met only the first of these requirements, namely, that the notice was written. We consider this to be an issue of substantial compliance with the Act's notice requirement, which we review de novo. *See Martinez v. Sedillo*, 2005-NMCA-029, ¶ 3, 137 N.M. 103, 107 P.3d 543 (stating that matters of statutory construction are reviewed de novo); *see also Moody*, 835 F.2d at 748 (reviewing de novo the issue of the sufficiency of a notice under the Miller Act).

**{24}** Liberty complains that notice was served by certified, not registered, mail at the contractor's post office box and that the amount stated as being owed did not include amounts in invoices produced at trial. Based on several factors it sets out in its brief in chief, Liberty argues that, "more importantly," the notice was not mailed within ninety days of last providing materials. In that regard, Liberty argues that even if it were arguable that "the last two Neumark invoices were properly identified as being for the [project], these items were clearly for repair or corrective work" and under federal Miller Act cases, "repairs, replacement parts[,] or corrective work do not toll the [ninety]-day notice period."

**{25}** The district court found that Neumark mailed notices of claim on May 22, 2007, by certified mail to each of the contractor's addresses as reported by the contractor to the New Mexico Public Regulation Commission, as shown by the Commission's on-line records. The court also found that the contractor actually received notice. The court's findings further indicate the amount claimed for material did not include amounts for tools or equipment rather than irrigation material and that the notice to the contractor stated the amounts with substantial accuracy. Finally, the district court found that Neumark last supplied material to the project on May 3, 2007. Liberty does not challenge these findings.

**{26}**     From the findings, one can reasonably infer that the court determined that Neumark's invoices accurately stated the amounts owed to Neumark. And the court concluded that Neumark's notice of claim "substantially complied with the notice requirements of . . . [Section] 13-4-19(A)" and was timely. Under our standard of liberal construction of the Act to protect a supplier of material, together with the district court's unchallenged findings of fact, we cannot say that the court erred in concluding that Neumark substantially complied with the notice requirement pursuant to Section 13-4-19(A). *See Moody*, 835 F.2d at 747-48 (holding that a Miller Act notice was sufficient although not sent by registered mail, when it was actually received, noting that the Supreme Court had "stated that the manner of notice specified in the [Miller] Act is merely to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received" (internal quotation marks and citation omitted)).

**Notice to the Obligee**

**{27}**     Under the Act, the claimant must "notify the obligee named in the bond of the beginning of [the] action, stating the amount claimed, and no judgment shall be entered in such action within thirty days after giving such notice." Section 13-4-19(B). Liberty argues that Section 13-4-19(B) "required Neumark to provide notice to the City . . . of the beginning of its lawsuit so that the City . . . might have the opportunity to also commence an action regarding Neumark's claims within the one-year statute of limitation" in Section 13-4-19(C) that restricts the time an obligee can sue after the date of final settlement of a contract. Liberty then argues that, by the time the City received notice, the City was not able to file an action pertaining to Neumark's action and, therefore, the district court had no jurisdiction to issue a judgment. We consider this to be an issue of substantial compliance with the Act and an issue of statutory interpretation, and we review such issues de novo. *See Martinez*, 2005-NMCA-029, ¶ 3.

**{28}**     The district court found that Neumark mailed written notices of its claim on the bond to the City on July 23 and 24, 2009. The court concluded that "[f]ailure by [Neumark] to notify the obligee of this action until July 2009[] does not bar [Neumark's] claims, as no judgment was entered within thirty (30) days after giving notice." Judgment was entered on October 16, 2009.

**{29}**     Neumark interprets the statute to require notice only "of the beginning" of the action and not "at the beginning" of the action. The district court did not address this distinction in its findings of fact and conclusions of law, but apparently determined that the City was not prejudiced because judgment had not been entered before it received notice. We cannot hold that the court erred.

**{30}**     Liberty has provided no persuasive argument or authority to support its view that the lateness of the notice to the obligee constitutes reversible error. We reject Liberty's contention that the district court was without jurisdiction to entertain Neumark's action on the bond. Liberty provides no rationale, much less authority, to support an argument that the notice requirement is jurisdictional and that a failure to provide notice to the obligee at the

9

beginning of the claimant's action on the bond deprives the court of jurisdiction to entertain that action. Further, even were one to construe the statute to intend that notice to the obligee on the bond be at the beginning of Neumark's action, we see no basis on which Liberty should be relieved of liability. Liberty does not refer us to any evidence showing that it or the City was in any way prejudiced by the timing of the notice to the City; showing that the City lacked knowledge of Neumark's claim and lawsuit; showing that, had the City known of Neumark's action earlier, the City would have sought to intervene in the action; or showing that, after notice, the City desired to intervene but because of time restraints was unable to do so.

**The Prejudgment Interest Issue Raised by Liberty**

{31}   Liberty contends that the district court erred in awarding prejudgment interest to Neumark based on the open account credit agreement terms. We review this legal issue de novo. *See Martinez*, 2005-NMCA-029, ¶ 3.

{32}   The court determined that Neumark and the subcontractor agreed to an interest rate of 18% on open accounts. The court concluded that "[i]nterest of 18% was justly due to Neumark and part of the balance unpaid on the . . . project at the time of the institution of the suit." This determination was immediately preceded by determinations that Liberty was "liable as surety on the bond issued pursuant to the . . . Act for sums justly due to Neumark under its credit agreements with [the subcontractor] (not including attorney[] fees) for materials supplied[.]" The court stated further that, with respect to prejudgment interest, NMSA 1978, Section 56-8-5 (1983) provided that "[i]n current or open accounts there shall not be collected more than [15%] interest annually thereon, thirty days after the delivery of the last article or service; provided that the parties may set a higher rate by agreement." The court reiterated that "[the subcontractor] and Neumark agreed to an interest rate of 18% on open accounts."

{33}   Liberty argues that the prejudgment interest award was erroneous because there existed no privity of contract between the contractor and Neumark and that the open account statute, Section 56-8-5, does not extend to third parties. Liberty also emphasizes the existence of the words "the parties" in Section 56-8-5 and argues that it cannot be held liable for interest pursuant to a contract to which its obligor, the contractor, was not a party, or pursuant to Section 56-8-5, "as it is clear the statute contemplates an agreement between contracting parties." Liberty also argues that the Act does not specify that interest may be awarded to a subcontractor's supplier. Liberty asserts further that the contractor should have no liability when it has no say or control in regard to interest obligations between subcontractors and their material suppliers. Liberty sets out what it considers to be various practical reasons why the Act does not provide for recovery of interest. And Liberty argues that denial of prejudgment interest "is in keeping with the majority of Miller Act case law, which does not award attorney[] fees unless there is privity of contract."[1]

---

[1] Liberty's majority of Miller Act case law on the issue of awarding attorney fees consists of the following cases: *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116 (1974); *Moody*, 835 F.2d 745; *United States ex rel. C.J.C., Inc. v. W. States*

**{34}** We are not persuaded by Liberty's arguments. Liberty does not provide authority that equates prejudgment interest with attorney fees in terms of either a privity-of-contract requirement or the propriety of recovery under the Miller Act. In fact, one of the attorney fee cases on which Liberty relies, *C.J.C.*, 843 F.2d at 1541-43, denies attorney fees but upholds an award of prejudgment interest. Liberty also fails to cite and discuss the several other federal cases that specifically allow recovery of prejudgment interest.

**{35}** The Act permits recovery "for the sum or sums justly due[.]" Section 13-4-19(A). *United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332 (4th Cir. 1996), provides the Miller Act guideline with respect to an award of interest.

> The Miller Act does not, by its own terms, provide for attorney[] fees or interest. Several circuits have held, however, that interest and attorney[] fees are recoverable if they are part of the contract between the subcontractor and supplier. The rationale of those decisions—that attorney[] fees and interest may be sums justly due under the Miller Act—is consistent with this court's rulings that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers.

*Id.* at 336 (internal quotation marks and citations omitted).[2] In *D & L Constr. Co.*, 332 F.2d at 1013, the court stated:

> The liability of the surety is measured by that of the prime contractor covered by the bond. The liability of the prime contractor to a project supplier of a subcontractor is governed by the subcontractor's obligation. Where there is no express contract for interest or attorney[] fees, it is necessary to look to state law to measure the extent of the subcontractor's obligation. In such a situation, state law will determine when interest is allowable and the rate of interest. Such a condition does not exist where, . . . interest and attorney[] fees are covered by express contract.

(Footnote omitted.) *D & L Construction* held that the interest rate agreed to in the contract between the subcontractor and the supplier was "by [the] contract made part of the purchase price of the materials and are sums justly due to [the supplier]." *Id.*; *see also State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. Co. of Am.*, 118 N.M. 558, 560-62, 883 P.2d 144,

---

*Mech. Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987); *Krupp I*, 831 F.2d 978; *United States ex rel. L.K.L. Assocs. v. Crockett & Wells Constr., Inc.*, 730 F. Supp. 1066 (D. Utah 1990); *Goodmans Office Furnishings*, 102 N.M. 22, 690 P.2d 1016.

[2] Supportive cases cited in *Maddux Supply* are the following: *United States ex rel. Se. Mun. Supply Co. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 876 F.2d 92, 93 (11th Cir. 1989) (per curiam); *United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc.*, 554 F.2d 164, 166 (5th Cir. 1977); *Travelers Indem. Co. v. United States ex rel. W. Steel Co.*, 362 F.2d 896, 899 (9th Cir. 1966); *D & L Constr. Co. v. Triangle Elec. Supply Co.*, 332 F.2d 1009, 1012-13 (8th Cir. 1964).

11

146-48 (1994) (holding that a subcontractor was entitled to sue the surety "for all contract liability" on a surety's payment bond, including prejudgment interest, where such interest was awardable against the contractor under a New Mexico statute, the bond required the surety "to pay claimants such sum or sums as may be justly due claimant" and the Act entitled the claimant to sue on the bond for such "sum or sums justly due"). We agree with the district court that prejudgment interest is awardable as a sum or sums justly due under Section 13-4-19(A) where the supplier and subcontractor agree to the interest in their contract.

**The Issues of Attorney Fees and Post-Judgment Interest Raised by Neumark**

{36}    In its cross-appeal, Neumark argues that the district court erred in holding that recovery of attorney fees was not permitted under the Act. The district court denied attorney fees based on the determination that neither Liberty nor the contractor was a party to the credit agreements. The court concluded that "[a]bsent privity of contract, a payment bond claimant cannot recover attorney[] fees from a contractor."

{37}    Liberty argues that the Act does not provide for attorney fees and that under the plain reading of the Act, a claimant has a right to recover only the amount of the balance unpaid at the time of the action and that the statute only allows recovery for the material actually furnished under the contract "in respect of which a payment bond is furnished[.]" Liberty also argues that "[f]ederal courts interpreting the federal Miller Act have ruled that absent a provision in the contract or payment bond awarding attorney fees, a Miller Act plaintiff can only recover under one of the recognized exceptions to the general principle that each party should bear the costs of its own legal representations."

{38}    Liberty relies on several federal cases to support its position regarding attorney fees. In *F.D. Rich*, 417 U.S. 116, which involved a material supplier to a subcontractor, *id.* at 119-20, the Court held that it was error to award the supplier attorney fees against the Miller Act surety's payment bond. *Id.* at 121, 126-31. The court's holding was based on various factors. There existed no contractual provision concerning attorney fees, and the American Rule precluded an award of attorney fees. *Id.* at 126, 128-29. The Miller Act does not explicitly provide for an award of attorney fees to a successful plaintiff, and an award under the Miller Act could not be based on state law. *Id.* at 126-27. Under the circumstances in *F.D. Rich*, recovery of the fees could not be considered under "sums justly due [under Section] 270b(a)[.]" *Id.* at 128-29; *see* 40 U.S.C.A. § 3133.

{39}    In *C.J.C.*, citing *F.D. Rich*, the Court indicated that "[t]he question of attorney[] fees in a Miller Act action is a matter of federal law," and "[t]he Act does not provide attorney[] fees for the prevailing party." *C.J.C.*, 834 F.2d at 1542-43. The court stated that "[a]bsent a provision in the contract or payment bond awarding attorney[] fees, a Miller Act plaintiff may only recover under one of the federally recognized exceptions to the general principle that each party should bear the costs of its own legal representation." *Id.* at 1543 (internal quotation marks and citation omitted). The court stated further that "[w]hen the agreement between the contractor and the subcontractor provides for attorney[] fees, the subcontractor may recover from the contractor and its Miller Act surety consistent with the terms of that

agreement." *Id.* at 1548; *see also United States ex rel. D & P Corp. v. Transamerica Ins. Co.*, 881 F. Supp. 1505, 1510 (D. Kan. 1995) (denying attorney fees claimed by a subcontractor based on *C.J.C.* on the ground that none of the prerequisites for the award under federal law were established); *L.K.L. Assocs.*, 730 F. Supp. at 1066-68 (denying attorney fees based on *F.D. Rich*, *Krupp I*, and *C.J.C.* and interpreting *C.J.C.* as "holding that the attorney[] fees provision must be included in either the *general* contract or the payment bond").

**{40}** Liberty relies, too, on language in *Goodmans Office Furnishings*, namely, "[a]bsent authority or rule of the court, attorney fees are not recoverable as an item of damage" and also relies on *Goodmans Office Furnishings* because, in response to the supplier's claim for attorney fees based on its contract with the subcontractor, our Supreme Court found that no contract existed between the supplier and the contractor. *See* 102 N.M. at 23, 24, 690 P.2d at 1017, 1018.

**{41}** Neumark relies on several federal cases that show why Liberty's cases are not persuasive and that hold that a material supplier to a subcontractor can recover attorney fees against the surety's payment bond when the contract between the material supplier and subcontractor provides for recovery of attorney fees.[3] The court in *Trustees*, 785 F. Supp. at 897, persuasively rejects the cases on which Liberty relies. First, the court distinguishes *F.D. Rich* and points out that the Eleventh Circuit abandoned the reasoning in *Krupp I*, citing *Se. Mun. Supply*, 876 F.2d at 93; *Krupp II*, 923 F.2d at 1527. The court in *Trustees* further points out that the continued vitality of *L.K.L. Associates* was dubious, because it took its direction from *Krupp I*. *Trustees*, 785 F. Supp. at 898. And, lastly, the court in *Trustees* rejected *C.J.C.*, stating that

> [l]anguage in [*L.K.L. Associates*] suggests that in [*C.J.C.*], the Tenth Circuit implicitly followed the approach of *Krupp I*. In *C.J.C.*, . . . however, the court merely followed the holding of *F.D. Rich* that the American Rule applies in Miller Act cases unless there is a contractual agreement to the contrary or circumstances justifying an award under the bad faith or other exception to the American Rule. *C.J.C.*, . . . is not inconsistent with the majority rule that attorney fees in a Miller Act case can be awarded to [a] third party based on a contractual agreement between that party and a subcontractor.

---

[3] The cases on which Neumark relies are the following: *Maddux Supply*, 86 F.3d at 336; *United States ex rel. Krupp Steel Prods., Inc. v. Aetna Ins. Co. (Krupp II)*, 923 F.2d 1521, 1527 (11th Cir. 1991); *Se. Mun. Supply*, 876 F.2d at 93; *Carter Equip.*, 554 F.2d at 166; *Travelers Indem.*, 362 F.2d at 899; *D & L Constr.*, 332 F.2d at 1012-13; *United States ex rel. Trustees of Colo. Laborers Health & Welfare Trust Fund v. Expert Envtl. Control, Inc. (Trustees)*, 785 F. Supp. 895, 898 (D. Colo. 1992); *IBEX Indus., Inc. v. Coast Line Waterproofing*, 563 F. Supp. 1142, 1146 (D.D.C. 1983).

*Trustees*, 785 F. Supp. at 898 n.1 (citations omitted). The court indicated that "[a] majority of courts follow [the] approach" of the Eleventh Circuit in *Se. Mun. Supply Co.*, and *Krupp II*, citing most of the cases Neumark cites to this Court. *Trustees*, 785 F. Supp. at 897-98.

**{42}** We note that *Maddux Supply* arrived at its holding with respect to recovery of attorney fees, as well as interest, based in part on the liberal construction of the Miller Act required by the United States Supreme Court in *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). *Maddux Supply*, 86 F.3d at 335-36; *see also Se. Mun. Supply*, 876 F.2d at 93 (affirming an award of attorney fees under the Miller Act based on *Carter*); *Travelers Indem.*, 362 F.2d at 899 (same); *D & L Constr.*, 332 F.2d at 1012 (same). Along with its guidance that the Miller Act "should receive a liberal construction to effectuate its protective purposes[,]" in considering a direct contract with the general contractor, *Carter* held that reasonable attorney fees could be awarded as a sum or sums justly due under the Miller Act where the contract terms expressly provided for allowance of the fees. 353 U.S. at 216, 220. We note that this Court in *Nichols* also relied on *Carter* in affirming an award of attorney fees in an action on a surety bond furnished under the Act involving a direct contract with the general contractor. *Nichols*, 100 N.M. at 446, 671 P.2d at 1157.

**{43}** We are not convinced, as Liberty suggests, that we need only turn to *Goodmans Office Furnishings* as controlling authority on the issue of recovery of attorney fees under the Act. In its very short discussion of the question, our Supreme Court in *Goodmans Office Furnishings*, 102 N.M. at 23, 690 P.2d at 1017, gives no indication of what particular positions and authorities were presented on the issue to the district court or on appeal. Nor did the Court cite any authority on the question whether attorney fees were awardable, and the Court disposed of the matter by merely stating that it would not reverse the district court "unless it appears that its findings and conclusions cannot be sustained either by evidence or permissible inferences therefrom." *Id.* at 24, 690 P.2d at 1018. *Goodmans Office Furnishings*' discussion on the question is not sufficiently developed to bind this Court as precedent, particularly given the body of federal law under the Miller Act on the issue that permits an award of attorney fees when a state statute or a contract allows for attorney fees.

**{44}** We hold that attorney fees are awardable as a sum or sums justly due under Section 13-4-19(A) where, as here, the contract between the subcontractor and supplier provides for an award of attorney fees incurred by Neumark in endeavoring to collect amounts due and unpaid under its credit agreements with the subcontractor.

**{45}** Neumark also cross-appeals asserting that the court erred in not awarding 18% post-judgment interest. The statute on post-judgment interest, NMSA 1978, § 56-8-4(A)(1) (2004), provides:

> Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless: . . . the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at a rate no higher than specified in the instrument[.]

**{46}**    The contract interest rate provision is broad enough to cover post-judgment interest as well as prejudgment interest.  We see no reason why the rationales and authorities permitting prejudgment interest and attorney fees to be awarded should not also apply to post-judgment interest.  We hold that Neumark is entitled to post-judgment interest in the amount permitted under the credit agreements.  *See id.*; *Weststar Mortg. Corp. v. Jackson*, 2002-NMCA-009, ¶ 55, 131 N.M. 493, 39 P.3d 710, *rev'd on other grounds by* 2003-NMSC-002, 133 N.M. 114, 61 P.3d 823.

**CONCLUSION**

**{47}**    We hold in favor of Neumark on all issues.  We therefore reverse the district court's determinations against Neumark on attorney fees and post-judgment interest and affirm on all other issues.  We remand for further proceedings in regard to what amount of reasonable attorney fees, in the exercise of the court's discretion, should be awarded to Neumark.

**{48}    IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State of NM ex rel v. Liberty Mutual Ins. Co.*, No. 30,068**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AR-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-NO | Notice |
| CP-TL | Time Limitations |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-CT | Contractors and Subcontractors |
| | |
| **CN** | **CONTRACTS** |
| CN-SB | Surety or Performance Bonds |
| | |
| **GV** | **GOVERNMENT** |
| GV-PC | Public Contracts and Purchase |

**IN**      **INSURANCE**
IN-AF      Attorney Fees
IN-GF      Good Faith
IN-NO      Notice
IN-SB      Sureties and Bonds

**JM**      **JUDGMENT**
JM-IN      Interest
JM-PI      Pre-Judgment Interest