This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39298**

**SAMUEL M. PARKER and JANE B. PARKER,**

Plaintiffs-Appellants,

v.

**JEROME MALDONADO, individually and as a licensed associate real estate broker; J. JACOB REALTY, LLC, a New Mexico limited liability company; J. JACOB ENTERPRISES, INC., a New Mexico corporation; DAVID W. HARPER, an individual; JON S. MCCALLISTER, an individual; PATRICIA A. MCCALLISTER, an individual; and PLACITAS, INC., a New Mexico corporation,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Court Judge**

Atler Law Firm, P.C.
Jazmine J. Johnston
Timothy J. Atler
Albuquerque, NM

Tal Young, P.C.
Steven Tal Young
Albuquerque, NM

for Appellants

Moses, Dunn, Farmer & Tuthill, P.C.
Alicia L. Gutierrez
Kathryn T. Ritter
Albuquerque, NM

O'Brien & Padilla, P.C.
Daniel J. O'Brien
Jeffrey M. Mitchell
Albuquerque, NM

for Appellees Jerome Maldonado, J. Jacob Enterprises, Inc., and J. Jacob Realty, LLC

Grammer Law Offices, P.C.
David A. Grammer III
Albuquerque, NM

for Appellees David W. Harper and Placitas, Inc.

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**     Plaintiffs Samuel and Jane Parker (the Parkers) purchased a home (the Property) that they claim "was not built according to promised standards and which had serious drainage issues." The Property was built and sold by Jerome Maldonado, who was (1) the sole officer and licensed contractor for J. Jacob Enterprises, Inc. (Enterprises), and (2) the qualifying broker for and licensed realtor with J. Jacob Realty, LLC (Realty). The Property is located in the Wild Horse Mesa Subdivision (the Subdivision), which was developed, in relevant part, by David Harper and Placitas, Inc. (collectively, the Placitas Defendants).[1] After experiencing flooding in their new home, the Parkers instigated the present case for various forms of misrepresentation, contract and warranty-related claims, and violations of the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). Defendants moved to dismiss the UPA claims based in part on *McElhannon v. Ford*, 2003-NMCA-091, ¶ 16, 134 N.M. 124, 73 P.3d 827. The district court granted Defendants' motions and awarded Defendants attorney fees under the UPA. *See* § 57-12-10(C). After trial, the district court entered judgment for the Parkers but limited the Parkers' damages to "[t]he reasonable cost to cure the drainage problem" and denied the Parkers' motion for attorney fees. The Parkers appealed. We reverse the district court's award of attorney fees under the UPA but otherwise affirm.

**DISCUSSION**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the background of this case, we provide only limited procedural background at the outset and develop additional factual context as it becomes necessary for our legal analysis. On appeal the Parkers assert four points of error: (1) dismissal of the UPA claims; (2) the award of attorney fees to Defendants under the UPA; (3) the district court's rulings

---

1For this opinion, we refer only to Enterprises and Realty collectively as "the Maldonado Defendants," because Maldonado was dismissed from the litigation in his individual capacity, and when referring to both the Maldonado Defendants and the Placitas Defendants, we use the term "Defendants."

on the Parkers' claims for greater compensatory relief; and (4) denial of the Parkers' request for attorney fees. We affirm as to points one, three, and four, but reverse as to point two. We begin with the two UPA-related issues, and because they are related, we consider them together.

## I. The UPA Claim and Associated Attorney Fee Awards

**{3}** The district court granted the Placitas Defendants' motion to dismiss the UPA claim, *see* Rule 1-012(B) NMRA, and granted the Maldonado Defendants' motion for summary judgment as to the UPA claim, *see* Rule 1-056(B)-(C) NMRA. Before trial the Parkers filed a motion to reconsider and argued that the district court misapplied this Court's holding in *McElhannon* and the burden of proof. The district court denied the motion to reconsider. After trial and after Defendants filed motions for attorney fees under the UPA, the Parkers, in addition opposing the fee requests, again requested reconsideration on the dismissals, which the district court again denied. The Parkers renew these arguments on appeal.

**{4}** We note that the Parkers' appeal suggests a seemingly complex cross-section of several different standards of review—they seek review of the denial of two motions to reconsider two different orders that dismissed the UPA claim as to one defendant and granted summary judgment on the claim for the other, in addition to awards of attorney fees. However, the parties' arguments present questions of law related to the construction of the UPA. We therefore proceed de novo on the dismissal of the UPA claims and the fee award thereunder. *See Kokoricha v. Est. of Keiner*, 2010-NMCA-053, ¶ 11, 148 N.M. 322, 236 P.3d 41 (providing that where the "resolution of [an] appeal depends solely on . . . legal questions . . . [and] no material issues of fact are in dispute" this Court engages in de novo review (internal quotation marks and citation omitted)). As to fees, "[w]e review the court's award of attorney fees for abuse of discretion, but when the issue involves misapplication of law to facts, we review the application of the law to the facts de novo." *J.R. Hale Contracting Co. v. Union Pac. R.R.*, 2008-NMCA-037, ¶ 93, 143 N.M. 574, 179 P.3d 579. With our standards of review in mind, we evaluate the district court's rejection of the Parkers' UPA claims and subsequent award of attorney fees to Defendants.

## A. The Parkers Do Not Demonstrate That the District Court Improperly Applied *McElhannon* to the UPA Claims

**{5}** The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." Section 57-12-3; *see Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 21, 142 N.M. 437, 166 P.3d 1091 (providing that the UPA "prohibits misrepresentations made in connection with the sale of goods or services by a person in the regular course of his trade or commerce" (omission, internal quotation marks, and citation omitted)). Section 57-12-2(D) defines trade practices as those relating to "the sale, lease, rental or loan *of goods or services*." (Emphasis added.) Thus, while the UPA governs "a broad array of commercial relationships," *Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 17, 356 P.3d 531

(internal quotation marks and citation omitted), claims for unfair or deceptive trade practices are limited to transactions involving goods or services, *see Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 14, 137 N.M. 524, 113 P.3d 347 ("[T]he UPA contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services."). We considered the meaning of "goods or services" in the real estate context in *McElhannon*. 2003-NMCA-091, ¶¶ 16-17 (internal quotation marks and citation omitted).

**{6}**     In *McElhannon*, the plaintiffs, who had purchased a newly constructed but defective home, brought a UPA claim against a contractor who did not obtain construction permits or comply with other requirements. *Id.* ¶¶ 3, 5-6. To determine whether the UPA applied to such a transaction, this Court considered the "ordinary and plain meaning" of the terms "goods" and "services." *Id.* ¶ 16 (internal quotation marks and citation omitted). We first defined "goods" as "personal estate as distinguished from realty" and "services" as "work done by one person at the request of another." *Id.* ¶ 17 (internal quotation marks and citation omitted). In the context of a real estate transaction, we explained that "[t]o the extent goods and services are combined to create a structure that is permanently affixed to realty, they are understood to have been 'converted' to realty." *Id.* The resulting "completed house, as a form of realty, cannot be 'goods' [and a]s tangible property . . . cannot constitute 'services.'" *Id.* As a result, completed realty is neither a good nor a service as contemplated by the UPA, and this Court therefore broadly held that "the UPA does not apply to sales of real estate." *Id.* ¶ 16.

**{7}**     The Parkers contend that *McElhannon* is distinguishable. They maintain that their UPA claims arose from allegations that (1) the Placitas Defendants neither disclosed material facts "reasonably necessary to prevent statements made to the Parkers from being misleading" nor ensured the Subdivision had appropriate drainage; and (2) the Maldonado Defendants misrepresented the condition of the Property when selling it and the extent and quality of the services that would be provided under a warranty agreement executed at the time the Property was purchased. According to the Parkers, because their complaints against Defendants stem from "services [that] extended beyond the purchase of the completed home," the underlying UPA claims "pertain[] not only to the Property but also to [D]efendants' services that did not 'convert' into realty." Thus, under the Parkers' reasoning, *McElhannon* does not apply. But the Parkers do not provide any meaningful distinctions to justify departing from the *McElhannon* analysis.

**{8}**     The Parkers argue that the existence of "completed realty does not excuse any unfair and deceptive trade practices that took place during the development of the land"[2] and assert that the Maldonado Defendants' actions to sell the Property after the

---

[2]We decline to entertain the Parkers' additional request, in a single sentence, that this Court should alternatively "reconsider *McElhannon* to ensure that the purpose of the UPA is vindicated in situations such as this." In *McElhannon*, we refer to longstanding, traditional property principles, *see* 2003-NMCA-091, ¶ 17, and "special justification" is warranted to support departure from such precedent, *see Trujillo v.*

home was completed were not services that combined into the completed home. Given our analysis in *McElhannon*, we cannot agree. *See* 2003-NMCA-091, ¶¶ 16-17. The alleged misrepresentations in *McElhannon* related to services very similar to those in the present case. The *McElhannon* defendants misrepresented that permits and certificates of occupancy were issued, and this Court held that those services combined into the completed realty. *Id.* ¶¶ 5, 17. The misrepresentations in the present case involved allegations that the Placitas Defendants misrepresented that the Subdivision complied with its own rules and requirements and that the Maldonado Defendants misrepresented the state of the Property in presale disclosures. Defendants developed, constructed, marketed, and sold the Property. The Parkers purchased a completed house.[3] The services provided—the development, construction, marketing, and selling—resulted in the purchase of that completed house. Under these circumstances, the Parkers have not demonstrated that the services provided by Defendants stand apart from the completed realty. *See McElhannon*, 2003-NMCA-091, ¶ 17.

**{9}** The Parkers briefly point to *Fogelson v. Wallace*, 2017-NMCA-089, 406 P.3d 1012. In *Fogelson*, the plaintiffs contracted to build a new home. *Id.* ¶ 1. However, before the completion of construction, the development company ceased operations leaving the plaintiffs with an uncompleted home. *Id.* ¶ 10. In determining the applicability of the UPA, this Court held that

> [r]ather than entering a sales agreement for a completed house, the [p]urchase [a]greement called for [the development company] to construct the [h]ome on a designated vacant lot. Importantly, [claimant]s never received a "completed" house because [the development company] closed before completing construction on the [h]ome. Under such circumstances, the "combined" view of goods and services expressed in *McElhannon* does not apply. Instead, we must consider the plain meaning of the word "services" as it is used in Section 57-12-2(D).

*Fogelson*, 2017-NMCA-089, ¶ 78. We concluded that the construction services provided in *Fogelson* were undoubtedly "work done by one person at the request of another" and held that "construction services *rendered prior to the completion of a residential home* are 'any services' as defined in Section 57-12-2." *Fogelson*, 2017-NMCA-089, ¶ 81 (emphasis added) (internal quotation marks and citation omitted). In contrast, the Parkers entered into a transactional relationship after the Property's development and

---

*City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 956 P.2d 305 (internal quotation marks and citation omitted).

3On appeal, the Parkers also argue that their UPA claims related to "remediation and maintenance" of the Property and the warranty. The Parkers do not appear to have preserved an argument that post-purchase actions supported the UPA claims in their amended complaint. To the contrary, the Parkers argued that "[t]he UPA claims arose before the residence was ever 'converted' to realty." To the extent that the Parkers suggest otherwise on appeal, our review of the record does not reveal where the Parkers invoked a ruling from the district court regarding the UPA's application to remediation, maintenance, or warranties, nor do the Parkers provide us with such direction. *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 12, 139 N.M. 12, 127 P.3d 548 (requiring that a party, to preserve an issue for appeal, "clearly raise the issue in the lower court"). We therefore do not consider those arguments further.

construction, and they purchased a completed home. *See id.* ¶¶ 77-78. Unlike in *Fogelson*, therefore, *McElhannon* applies because "the house at issue was 'completed,' such that, in context, the definitions of goods and services are 'combined' rather than viewed independently." *Fogelson*, 2017-NMCA-089, ¶ 77.

**{10}** The Parkers also rely on this Court's memorandum opinion in *Gyros, Inc. v. Mahon*, A-1-CA-37067, mem. op. (N.M. Ct. App. Jan. 29, 2020) (nonprecedential). We are neither bound by our unpublished opinions, *see Romero v. City of Santa Fe*, 2006-NMCA-055, ¶ 27, 139 N.M. 440, 134 P.3d 131, nor, importantly, are we persuaded that our analysis in *Gyros* warrants or suggests a departure from *McElhannon* in the present case. In *Gyros*, the defendant invoked *McElhannon* in an attempt to avoid liability under the UPA, but we were unpersuaded. *Gyros, Inc.*, A-1-CA-37067, mem. op. ¶¶ 9, 13. The defendant was hired to renovate restaurant space and supplied "personal estate" in the form of the equipment needed for the restaurant to operate as well as construction services. *Id.* ¶¶ 11-12 (internal quotation marks omitted). The *Gyros* defendant never "contracted to sell to [the p]laintiff a completed piece of real estate, or in fact did so. Instead, the parties contracted for the construction of tenant improvements required in order for [the p]laintiff to open for business." *Id.* ¶ 17 (alteration, internal quotation marks, and citation omitted). Thus the *Gyros* defendant provided goods and services in connection with renovating already-existing commercial restaurant space. In contrast, the services that Defendants provided—development, construction, marketing, and sale—resulted in a new and completed residential home. These distinctions are crucial, as our holding in *McElhannon* was premised on the combination of similar services into the sale of an entirely new, completed, residential home.

**{11}** We are obligated to interpret the provisions of the UPA liberally, as the Parkers note, in order to effectuate its intent to protect innocent consumers. *See Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 30, 147 N.M. 583, 227 P.3d 73. Nevertheless, this Court has viewed the "ordinary and plain meaning" of the terms "goods" and "services" to exclude transactions that culminate in a sale of completed realty. *See McElhannon*, 2003-NMCA-091, ¶¶ 16-17 (internal quotation marks and citation omitted). The Parkers make further arguments for the applicability of the UPA, but the pleaded claims involved the services that combined into the completed home, which is realty and neither goods nor services for UPA purposes. We hold therefore that the district court properly dismissed the UPA claims as a matter of law.

**B.      The Parkers' UPA Claims Nevertheless Were Not Groundless as Section 57-12-10(C) Requires to Award Attorney Fees to Defendants**

**{12}** The UPA provides that the district court "shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice . . . if it finds that the party complaining of such trade practice brought an action that was groundless." Section 57-12-10(C). We have previously held that "we do not read [Section 57-12-10(C)] to authorize an award of attorney[] fees to [the d]efendants merely because they successfully prevailed against the claims asserted by [the p]laintiff." *G.E.W. Mech. Contractors, Inc. v. Johnston Co.*, 1993-NMCA-081, ¶ 23, 115 N.M. 727, 858 P.2d 103.

Instead, we have determined that the purpose of the term "groundless" in Section 57-12-10(C) is "to reimburse a party for the expense of defending a frivolous action and to dissuade parties from filing actions where there is no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification, or reversal of existing law." *G.E.W. Mech. Contractors, Inc.*, 1993-NMCA-081, ¶ 23.

**{13}** The Parkers argued cogently that *McElhannon* did not apply to the complex facts in the present case. The Parkers' UPA claims were therefore not "groundless"—i.e., frivolous—because they advocated "for the extension, modification, or reversal of existing law." *G.E.W. Mech. Contractors, Inc.*, 1993-NMCA-081, ¶ 23. The district court's conclusion to the contrary was "premised on a misapprehension of the law" in applying Section 57-12-10(C), and accordingly, the district court abused its discretion in awarding Defendants' attorney fees related to the Parkers' UPA claims. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted)).

## II. The Evidence Supported the District Court's Rejection of the Parkers' Claims for Additional Compensatory Damages

**{14}** The Parkers contend that the district court's damages award was insufficient because they were not "fully compensated for their damages," assert that "[w]hether the district court erred in failing to award damages for [D]efendants' misrepresentations is a question of law," and seek de novo review. They explain that they "advanced several legal theories seeking relief for their reliance on [D]efendants' misrepresentations," and maintain that they "proved [Defendants'] liability as to their negligent misrepresentation claim, in addition to related claims for breach of contract and unjust enrichment." As a result, the Parkers contend that the district court erroneously disregardedevidence that the development and construction of the Property did not comply with other requirements and that by "address[ing] only the drainage issue," the district court "did not account for the fact that the Parkers did not receive what they bargained for" or provide for "damages that resulted from [D]efendants' misrepresentations." These arguments disregard the district court's findings that rejected many of the factual assertions on which the Parkers' appellate arguments rely. *See Cockrell v. Cockrell*, 1994-NMSC-026, ¶ 5, 117 N.M. 321, 871 P.2d 977 (explaining that because appellate courts are not fact-finding courts, "we must depend upon the findings made by the [district] court to support a conclusion and judgment"). We look to those findings to determine whether the district court's damages award was supported by substantial evidence. *See Robey v. Parnell*, 2017-NMCA-038, ¶ 10, 392 P.3d 642.

**{15}** The district court rejected the Parkers' contention that the Maldonado Defendants failed to disclose the Property's compliance (or noncompliance) with the Subdivision's standards, determined that the "proper measure of the [Parkers'] damages" was the "cost to cure the drainage problems" on the Property, and awarded the Parkers $36,198.01. These conclusions were supported by the district court's detailed factual findings, and our review of the record confirms that those findings were supported by

the evidence at trial. Specifically, (1) the disclosure statement "was accurate based upon the information known to [the Maldonado Defendants] at the time it was completed and delivered to" the Parkers; (2) the Property did not violate the Subdivision's terrain management plan or covenants, conditions, and restrictions; (3) any violation of the Subdivision's suggested height restrictions did not cause any flooding and remediation short of razing the house was appropriate; and (4) the cost to remediate any flooding was $36,198.01, and the house would have significant value after remediation. The Parkers' arguments to the contrary would require us to reweigh the evidence, a task that as an appellate court, we do not undertake. *See Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 21, 129 N.M. 436, 10 P.3d 115 ("A reviewing court may not reweigh evidence or substitute its judgment for that of the factfinder."); *see also Alexander Hamilton Inst. v. Smith*, 1930-NMSC-051, ¶ 3, 35 N.M. 30, 289 P. 596 ("Most of appellant's assignments of errors resolve themselves into this, that the judgment should have been for the defendant on the evidence[; b]ut it was for the district judge, and not for th[e C]ourt to determine what conclusions the evidence would warrant.").

### III.     The District Court Did Not Abuse Its Discretion in Denying the Parkers' Attorney Fees Request

**{16}**     After entering judgment in favor of the Parkers to provide reasonable compensation to remediate the Property, the district court invited the parties to file a motion should they have "a good faith basis . . . to argue that it is the prevailing party and is entitled to award of costs and attorney[] fees." The Parkers and Maldonado Defendants each filed motions for attorney fees, and claimed, in part, to be the prevailing party under the purchase agreement and Rule 1-054(D) NMRA. The district court declined to award either party attorney fees, apart from the awards under the UPA. On appeal, the Parkers argue that they were the prevailing party and therefore are entitled to costs under Rule 1-054(D) and attorney fees and costs under the purchase agreement.

**{17}**     District courts have broad discretion to award or refuse to award costs and attorney fees. *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 23, 133 N.M. 335, 62 P.3d 1217 (discussing the award of attorney fees); *Mayeux v. Winder*, 2006-NMCA-028, ¶ 40, 139 N.M. 235, 131 P.3d 85 (awarding of costs). Rule 1-054(D)(1) states that recoverable costs "shall be allowed to the prevailing party unless the court otherwise directs." In addition, the parties' contract provides that "[s]hould any aspect of this Agreement result in arbitration or litigation, the prevailing party of such action . . . shall be entitled to an award of reasonable attorney[] fees and court costs." Thus, key to our determination is whether the Parkers were the prevailing party.

**{18}**     The Parkers urge that they are prevailing parties because they were "the only parties who recovered a judgment." We have defined "prevailing party" both as "the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment," and as "the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Mayeux*, 2006-

NMCA-028, ¶ 41 (internal quotation marks and citation omitted). As an example of the first "prevailing party" formulation, in *Fort Knox Self Storage, Inc. v. Western Technologies, Inc.*, 2006-NMCA-096, 140 N.M. 233, 142 P.3d 1, the plaintiff was the prevailing party because they obtained a money judgment, despite losing some claims outright and the jury finding the plaintiff to be comparatively at fault. *Id.* ¶¶ 33, 35-36. In *Mayeux*, however, we affirmed the district court's ruling that the defendants were the prevailing party, because the plaintiffs lost on most of their claims and received a significantly lower damages award than they requested. 2006-NMCA-028, ¶¶ 42-44.

**{19}** Thus, broadly, New Mexico courts have adopted a "prevailing party" approach that is neither mechanical nor formulaic, but instead that "is governed by, and should be apportioned according to, the facts and circumstances of the case and the extent to which the parties, in fact prevailed." *Hedicke*, 2003-NMCA-032, ¶ 30. In both *Mayeux* and *Fort Knox*, this Court deferred to the broad discretion of the district courts when awarding attorney fees, so long as that discretion is not abused. Much like *Mayeux* and *Fort Knox*, the district court's award in the present case is reasonable—though the Parkers recovered the only money judgment, they lost on a majority of their claims, and the judgment awarded was significantly less than what the Parkers requested. Accordingly, we cannot conclude that the district court's determination was an abuse of discretion. *See Mayeux*, 2006-NMCA-028, ¶ 32 ("We will only overturn a decision under the abuse of discretion standard where the court's ruling exceeds the bounds of all reason or is arbitrary, fanciful, or unreasonable." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{20}** We therefore affirm in part and reverse in part.

**{21}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**